People v. Haycraft

(text box: 1)
 NO. 5-02-0636

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Montgomery County.  

)

v. ) No. 01-CF-160

)   

SCOTT A. HAYCRAFT, ) Honorable

) John P. Coady,

Defendant-Appellant. ) Judge, presiding. 

___________________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:

Following a stipulated bench trial, the defendant, Scott A. Haycraft, was convicted of criminal drug conspiracy and unlawful manufacture of a controlled substance.  The trial court sentenced the defendant to concurrent prison terms of 19 years for each conviction.

On appeal, the defendant argues that the search of his home was unconstitutional, that he was denied due process during his stipulated bench trial, that the State failed to prove he possessed more than 900 grams of methamphetamine, that he was denied the effective assistance of counsel, that his conviction for criminal drug conspiracy must be reversed, and that he was entitled to credit toward fines for the time he spent in custody prior to sentencing.

We affirm in part, vacate in part, and remand.

FACTS

On August 24, 2001, the defendant was charged by an indictment with criminal drug conspiracy (720 ILCS 570/405.1 (West 2000)), unlawful manufacture of a controlled substance (720 ILCS 570/401(a)(6.5)(D) (West 2000)), unlawful possession with the intent to deliver a controlled substance (720 ILCS 570/401(a)(6.5)(D) (West 2000)), and unlawful possession of a controlled substance (720 ILCS 570/402(a)(6.5)(D) (West 2000)).

On April 8, 2002, the defendant filed his motion to suppress and alleged that members of the drug task force had unlawfully entered his home without a warrant and without probable cause.  The defendant requested that, as a result of the illegal search and seizure, the contraband illegally seized and his resulting incriminating statement be suppressed.

On May 2, 2002, at the hearing on the motion to suppress, Shannon Champion, senior parole agent for the Illinois Department of Corrections, testified that she was assigned to supervise the defendant's parole.  In the defendant's parole agreement, which the defendant signed on November 2, 2000, the defendant agreed to permit an agent of the Department of Corrections to visit him at his home or "elsewhere as [the agent] directs."

 Agent Champion testified that the defendant tested positive for amphetamines on December 8, 2000; on May 12, 2001; and on June 2, 2001.  At 11 p.m. on July 13, 2001, Agent Champion went to the defendant's home.  Before Agent Champion's visit to the defendant's home that evening, other parolees whom Agent Champion supervised had told her that the defendant had been cooking methamphetamine.  Nothing indicated, however, that the defendant would be cooking methamphetamine in his home at the time of her visit.

Officer Rick Robbins and the drug task force, along with Jim Ferry and Ron Howard, Agent Champion's fellow parole agents, waited a block away while Agent Champion proceeded to the home.  Agent Champion requested their assistance because she had little experience with methamphetamine but knew that manufacturing methamphetamine could be very dangerous.

Agent Champion testified that upon arriving at the defendant's home, she smelled an "unbelievable" chemical smell that signaled to her that methamphetamine was cooking.  Agent Champion stopped the defendant's son from running to the door of the home, the agent stating that the chemical smell was too strong.  Agent Champion hit her radio to signal the awaiting officers to come to the home.  The defendant met Agent Champion at the door.  Agent Champion could see a gentleman in the kitchen.   

Agent Champion testified that she "knew that [the defendant] was cooking" and asked the defendant who else was in the house.  Upon stepping into the house, Agent Champion entered the kitchen and observed a semiclear liquid cooking in pans on the stove, smelled the odor emanating from the pans, and witnessed fans blowing steam out the window.  The other officers arrived at the defendant's home, and Agent Champion and a deputy walked through the house to a bedroom and told the defendant's pregnant wife to exit the home to avoid danger.  Agent Champion arrested the defendant for his parole violation.

Montgomery County Deputy Rick Furlong, from the drug task force, testified that he had received informal training in drug-related investigations.  On July 13, 2001, Deputy Furlong stayed a block and a half down the street from the defendant's home while Agent Champion proceeded to the home.  After Agent Champion signaled that she needed assistance, he proceeded to the defendant's home.  

Deputy Furlong testified that methamphetamine laboratories involve anhydrous ammonia; lithium; pseudoephedrine; Coleman fuel, ether, starting fluid, glass jars, hydrogen generators, or gas generators; and jars with tubes coming out of them.  Deputy Furlong explained that methamphetamine laboratories pose a significant hazard to persons nearby and that his first concern is for the safety of those present.  

Deputy Furlong testified that prior to searching the defendant's home, Deputy Furlong had observed lighter fluid and Coleman fuel.  Upon stepping into the defendant's home, Deputy Furlong entered an enclosed porch adjacent to the kitchen.  Deputy Furlong smelled the chemical odor, and upon entering the kitchen, he observed pots on the stove with a clear liquid that was steaming and a fan blowing steam out the window.  Deputy Furlong notified Agent Champion that it was a methamphetamine laboratory and that it was necessary to exit the premises for safety reasons.  Deputy Furlong accompanied Agent Champion through the home for the safety of persons in the home.  When Deputy Furlong arrived at the bedroom, he observed a pan in the bedroom and expressed urgency to exit the home for safety reasons.

Heather Haycraft, the defendant's wife, testified that on July 13, 2001, she was pregnant, that Agent Champion woke her in the bedroom of the defendant's home, and that upon leaving the home, she did not smell a chemical odor.  Heather did not recall empty bottles of lighter fluid or a hot plate and a fan in the bedroom.

Following the hearing, the court denied the motion to suppress.

On May 13, 2002, the defendant waived his right to a jury trial, signing a waiver-of-jury-trial form.  On May 23, 2002, the court proceeded with a stipulated bench trial and stated, "[I]t is likely that the court will find the defendant guilty."  The court also stated:   "So on the one hand I am telling the [S]tate it's not 100 percent guaranteed, but yet almost to the defendant I am saying it's 100 percent guaranteed that he will be found guilty.  So I will admonish [the defendant].

* * *

***  Now, we are going to go ahead *** with the stipulated bench trial.  It means it is very probable that you will be found guilty of it and have sentencing hearing set in about 6 weeks and then you will be given a prison sentence and then you are going to appeal the court's rulings.

* * *

*** [I]f we have the stipulated bench trial[,] it's almost certain you will be found guilty.  ***  And at the same time I turn to the [S]tate and say just because it's a stipulated bench trial there is [
sic
] no breaks.  You really have to prove it."

Throughout the proceeding, the trial court referenced that the proceeding was a stipulated bench trial.  The court explained to the defendant that he was waiving "the traditional right to a trial, a trial where the [S]tate is required to present evidence in the courtroom," but the court also stated, "The [S]tate has the burden *** even at the stipulated bench trial [to prove the defendant] guilty beyond a reasonable doubt."  The court questioned whether the defendant had been coerced, forced, or made promises "to get [him] to plead to the stipulated bench trial," and the defendant responded, "None other than the right to appeal."

Defense counsel moved to dismiss the charges and alleged that although the lab reports indicated that methamphetamine was present in the substances that had been in the defendant's possession, materials other than methamphetamine improperly increased the weight charged against the defendant.  The trial court denied the motion.

The defendant and the State stipulated to the following facts: Agent Champion conducted a home visit wherein the defendant was present and thereafter placed under arrest; during the search of the defendant's home, law enforcement agents found several containers containing a clear liquid and took samples of the liquid, which was later identified by a forensic chemist as methamphetamine; the samples did not cross-contaminate each other and were not contaminated in any way; the aggregate weight of the liquid testing positive for the presence of methamphetamine was more than 900 grams; in his written statement, the defendant stated that he and Dale Cole were finishing a methamphetamine cook that Dale Cole and Ryan Bess had started, that he drove Dale and Ryan to buy precursors for the cook, and that he helped with the end process of the cook; and the trial testimony of Agent Champion and Deputy Furlong would be consistent with their testimony at the motion-to-suppress hearing.  The State also presented a videotape of police collecting substances from the defendant's kitchen and presented the defendant's written statement.  The State dismissed the charge of unlawful possession with intent to deliver a controlled substance.

The trial court found the defendant guilty of criminal drug conspiracy, unlawful manufacture of a controlled substance, and unlawful possession of a controlled substance.

On June 21, 2002, the defendant filed his motion for a new trial and argued that the trial court improperly denied his motion to suppress and that the methamphetamine samples were contaminated by the police.  The trial court denied the defendant's motion for a new trial.

On July 22, 2002, the court sentenced the defendant to 19 years in prison for criminal drug conspiracy and 19 years in prison for unlawful manufacture of a controlled substance, with the sentences to run concurrently.  In addition, the trial court ordered the defendant to pay a $3,000 mandatory drug assessment, a $100 street value fine, and a $50 forensic lab fee.  The trial court credited the defendant for 375 days served in custody.

At the sentencing hearing, the trial court explained that it was imposing the 19-year sentences because the defendant's methamphetamine laboratory caused or threatened serious harm, because the defendant's criminal history was substantial, and because the defendant threatened to kill Agent Champion.

On August 16, 2002, the defendant filed a motion to reconsider his sentence.  On August 27, 2002, the trial court filed its amended judgment and sentence.  On September 20, 2002, the trial court denied the defendant's motion to reconsider, and the defendant filed his timely notice of appeal.

ANALYSIS

Warrantless Search

The defendant argues that the search of his home was unconstitutional because his parole agreement did not give Agent Champion the authority to search his home without a warrant.

Generally, a circuit court's ruling on a motion to suppress evidence presents a mixed question of law and fact.  
People v. Thomas
, 198 Ill. 2d 103, 108 (2001).  We uphold the factual findings of the circuit court unless they are against the manifest weight of the evidence.  
People v. Gherna
, 203 Ill. 2d 165, 175 (2003).  We review 
de novo
 whether the suppression was appropriate under those facts.  
Gherna
, 203 Ill. 2d at 175; 
People v. Sorenson
, 196 Ill. 2d 425, 431 (2001).  We note that when the State prevails on a motion to suppress, it is unfair to find that it waived any argument that might have been raised in support of the court's ruling in its favor.  
People v. Janis
, 139 Ill. 2d 300, 319 (1990).

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., amend. IV.  The fourteenth amendment (U.S. Const., amend. XIV) makes the fourth amendment applicable to the states.  
Elkins v. United States
, 364 U.S. 206, 213, 4 L. Ed. 2d 1669, 1675, 80 S. Ct. 1437, 1442 (1960).  The fourth amendment provides the same level of protection as the search-and-seizure provision in the Illinois Constitution (Ill. Const. 1970, art. I, §6).  
People v. Lampitok
, 207 Ill. 2d 231, 240 (2003).  

The fourth amendment requires searches and seizures to be reasonable, "measured in objective terms by examining the totality of the circumstances."  
Ohio v. Robinette
, 519 U.S. 33, 39, 136 L. Ed. 2d 347, 354, 117 S. Ct. 417, 421 (1996).  Whether a search is reasonable under the fourth amendment requires a two-step analysis: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."  
Terry v. Ohio
, 392 U.S. 1, 19-20, 20 L. Ed. 2d 889, 905, 88 S. Ct. 1868, 1879 (1968).

In the usual case, the fourth amendment requires the government to obtain a warrant supported by probable cause before conducting a search.  
Illinois v. McArthur
, 531 U.S. 326, 330, 148 L. Ed. 2d 838, 847, 121 S. Ct. 946, 949 (2001); 
People v. Flowers
, 179 Ill. 2d 257, 262 (1997).  However, a state-run parole system presents special needs, beyond typical law enforcement, that may justify an exception to the usual warrant and probable-cause requirements.  See 
Griffin v. Wisconsin
, 483 U.S. 868, 873-74, 97 L. Ed. 2d 709, 717, 107 S. Ct. 3164, 3168 (1987).  Supervision during parole and ensuring that restrictions are followed constitute the special needs of the State which justify a greater degree of infringement on privacy than is generally constitutional with regard to the general public.  See 
Griffin
, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169.  Parolees do not enjoy the absolute liberty to which every citizen is entitled but only enjoy conditional liberty depending on special parole restrictions.  See 
Griffin
, 483 U.S. at 874, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169.  

In conjunction with the need for supervision, a degree of flexibility must be accorded the parole officer to respond quickly to evidence of misconduct.  See 
Griffin
, 483 U.S. at 876, 97 L. Ed. 2d at 719, 107 S. Ct. at 3170.  The parole officer must be able to proceed on the basis of her entire experience with the parolee, and especially in cases involving drugs, parole officers must be able to act based on a lesser degree of certainty than the fourth amendment would otherwise require to intervene before a parolee damages himself or society.  See 
Griffin
, 483 U.S. at 879, 97 L. Ed. 2d at 721, 107 S. Ct. at 3171; see also 
Lampitok
, 207 Ill. 2d at 250 (a probationer has a reduced expectation of privacy compared to ordinary citizens because he is a criminal offender, and the importance of the Illinois probation system justifies a warrantless search of a probationer upon a lesser degree of suspicion than probable cause).

"A police officer may lawfully seize an item in plain view without a warrant if he views the object from a position where he has a right to be and if the facts and circumstances known to the officer at the time he acts give rise to the reasonable belief that the item seized constitutes evidence of criminal activity.  [Citations.]"  
People v. Wright
, 80 Ill. App. 3d 927, 931 (1980); 
People v. Testa
, 125 Ill. App. 3d 1039, 1043 (1984).  The reasonable belief necessary to justify the seizure of the item is the same that would justify a finding of reasonable or probable cause.  
Wright
, 80 Ill. App. 3d at 931.  The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.  
Payton v. New York
, 445 U.S. 573, 587, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380 (1980).  "Plain view" provides grounds for the seizure of an item when an officer's access to the object has prior justification under the fourth amendment.  
Texas v. Brown
, 460 U.S. 730, 738, 75 L. Ed. 2d 502, 511, 103 S. Ct. 1535, 1541 (1983).  Requiring police to obtain a warrant once they have perceived contraband firsthand is a needless inconvenience that might involve danger to the police and the public.  
Texas
, 460 U.S. at 739, 75 L. Ed. 2d at 511-12, 103 S. Ct. at 1541. 

In the present case, Illinois law provided that the Prisoner Review Board may require that a parolee "permit the agent to visit him at his home or elsewhere to the extent necessary to discharge his duties."  730 ILCS 5/3-3-7(b)(6) (West 2000).  The defendant signed his parole agreement, which permitted an agent to visit him at his home or "elsewhere as [the agent] directs."  The special needs presented by Illinois's parole system justified Agent Champion's home visit.  Agent Champion's home visit, where she walked into the kitchen, the first room off the enclosed porch, was reasonable at its inception and in its scope under the fourth amendment.

Agent Champion had a lawful right to be in the defendant's kitchen, where, after smelling a distinctively powerful odor, she recognized, in plain view, a methamphetamine laboratory and cooking process.  Considering the overwhelming chemical smell, the clear liquid cooking in pans, the fans blowing steam out the windows, information from other parolees that the defendant was cooking methamphetamine, and the defendant's positive drug tests for amphetamine, Agent Champion reasonably believed that the items before her constituted evidence of criminal activity.  The officers thereafter had probable cause to search the entire house and needed no search warrant.  See 
People v. Porter
, 141 Ill. App. 3d 71, 74 (1986) (the court held that because the police saw cannabis seeds in plain view in an ashtray, they had probable cause to search, without a warrant, the remainder of the defendant's apartment, including a closed metal can containing cannabis seeds). 

Exigent circumstances also justified the remaining search of the defendant's home.  The fourth amendment does not "bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid" (
Mincey v. Arizona
, 437 U.S. 385, 392, 57 L. Ed. 2d 290, 300, 98 S. Ct. 2408, 2413 (1978)) or "when there is compelling need for official action and no time to secure a warrant" (
Michigan v. Tyler
, 436 U.S. 499, 509, 56 L. Ed. 2d 486, 498, 98 S. Ct. 1942, 1949 (1978)).  Exigent circumstances exist when the police reasonably believe that their safety or the safety of others may be threatened.  
United States v. Ware
, 914 F.2d 997, 1000 (7th Cir. 1990).  The need to protect life or avoid serious injury justifies what would otherwise be illegal, and the police may seize evidence that is in plain view during the course of their legitimate emergency activities.  
Mincey
, 437 U.S. at 392, 57 L. Ed. 2d at 300, 98 S. Ct. at 2413.  

Agent Champion viewed the methamphetamine laboratory in plain view where she had a legal right to be.  Agent Champion testified that upon recognizing the methamphetamine laboratory, she was aware of the danger, 
i.e.
, the volatile and combustible properties of clandestine methamphetamine laboratories.  Deputy Furlong also recognized the inherent danger of a methamphetamine laboratory occurring in the defendant's kitchen and reasonably believed that police safety and the safety of those in the home might be threatened.  The need to remove persons from the home and to locate, dismantle, and take possession of the dangerous instrumentalities used in cooking the methamphetamine was an exigent circumstance that justified the warrantless search.  The police properly seized the evidence in plain view during the course of their legitimate emergency activities.

Pursuant to statute, the defendant's parole agreement, and the diminished expectations of the defendant as a parolee, Agent Champion's initial warrantless entry was reasonable, and once the methamphetamine cook was visible in plain view, the police had probable cause to search the remainder of the defendant's home without a warrant.  Additionally, once the methamphetamine cook was visible in plain view, exigent circumstances also justified the remaining search of the home to prevent an unreasonable risk to the police and the occupants therein.  The trial court properly denied the defendant's motion to suppress.

Stipulated Bench Trial

The defendant next contends that he was denied the right to due process because while he believed he entered into a stipulated bench trial, he, in fact, entered a guilty plea where the court told him that his guilt was "almost 100 percent guaranteed."  The defendant argues that because he did not understand that he was pleading guilty but believed he was proceeding with a stipulated bench trial, he did not understandingly waive his right to a trial by a jury.  We reject the defendant's argument.

A guilty plea waives all nonjurisdictional defenses or defects, but a stipulated bench trial avoids the waiver rule "while still allowing the parties to proceed with the benefits and conveniences of a guilty plea procedure."  
People v. Horton
, 143 Ill. 2d 11, 22 (1991).   "[A] stipulated bench trial is not tantamount to a guilty plea if the defendant presented and preserved a defense."  
Horton
, 143 Ill. 2d at 22.  "[I]f the proceedings are in fact a stipulated bench trial in accordance with the 
Horton
 case, then the fact that the trial court admonished the defendant under Rule 402 does not transform the stipulated bench trial into a guilty plea."  
People v. Manuel
, 242 Ill. App. 3d 20, 24 (1993).

In the present case, the trial court's admonishments pursuant to the guilty plea procedure did not transform the defendant's stipulated bench trial into a guilty plea.  See 
Manuel
, 242 Ill. App. 3d at 24.  Throughout the proceeding, the trial court referenced that the defendant was continuing with a stipulated bench trial.  The defendant proceeded through his stipulated bench trial, preserving his defense theory that the evidence from the search should have been suppressed and that the methamphetamine had been improperly weighed.  The defendant knowingly waived his right to a jury trial, signing a waiver-of-jury-trial form.  The trial court admonished the defendant that he would be forfeiting his constitutional right to cross-examine witnesses and "the traditional right to a trial, a trial where the [S]tate is required to present evidence in the courtroom."  The defendant was aware of the rights he waived in his stipulated bench trial and was not denied due process.  See 
People v. Jones
, 212 Ill. App. 3d 570, 574 (1991). 

The defendant also contends that the trial court prejudged him guilty, as evidenced by the guilty plea admonishments and the trial court's statements during the stipulated bench trial.  See 
People v. McDaniels
, 144 Ill. App. 3d 459, 462 (1986) (the court's statement that the claim of self-defense was "pretty ridiculous," before the State's first witness had completed his testimony, revealed a biased trier of fact and denied the defendant due process).  

We have reviewed the entire record.  Although the trial court stated that it would likely find the defendant guilty and that the defendant's guilt was almost "100 percent guaranteed," the trial court stated that the State's case was not 100% guaranteed and that the State must still prove its case.  The trial court's statements at the defendant's stipulated bench trial did not evidence a prejudged bias; the trial court did not make a preliminary judgment regarding the sufficiency of the evidence that denied the defendant due process.

Insufficiency of the Evidence

The defendant next argues that his convictions must be reversed because the State did not prove that he possessed more than 900 grams of methamphetamine.  The defendant argues that until the cooking process was completed, he possessed only the ingredients for methamphetamine.  The defendant also argues that the videotape in the record shows evidence of police contamination because the officer shook a container before collecting the sample for testing.  We reject the defendant's arguments.

A criminal conviction will not be set aside on review unless the evidence is so unsatisfactory or improbable that there remains a reasonable doubt of the defendant's guilt.  
People v. Byron
, 164 Ill. 2d 279, 299 (1995).  In reviewing a sufficiency-of-the-evidence claim, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  
People v. Smith
, 177 Ill. 2d 53, 73 (1997).

Section 401 of the Illinois Controlled Substances Act provides in part as follows:

"[I]t is unlawful for any person knowingly to: (i) manufacture or deliver, or possess with intent to manufacture or deliver, a controlled or counterfeit substance or controlled substance analog or (ii) possess any methamphetamine[-]manufacturing chemical listed *** with the intent to manufacture methamphetamine or the salt of an optical isomer of methamphetamine or an analog thereof. ***

(a) Any person who violates this Section *** is guilty of a Class X felony and shall be sentenced to a term of imprisonment ***:

* * *

(6.5) ***

* * *

(D) not less than 15 years and not more than 60 years with respect to 900 grams or more of any substance containing methamphetamine or any salt of an optical isomer of methamphetamine, or an analog thereof."  720 ILCS 570/401(a)(6.5)(D) (West 2000).

In 
People v. Butler
, the defendant argued that the trial court had erred in including the weight of the liquid in which cocaine had been diluted to find that she possessed more than 900 grams of a controlled substance.  
People v. Butler
, 304 Ill. App. 3d 750, 757 (1999).  The court held that the cocaine-containing liquid fell within the ordinary meaning of the term "mixture," which is encompassed within the definition of "substance," and that the unambiguous language of the statute–prohibiting "any substance containing cocaine" (720 ILCS 570/401(a)(2)(D) (West 1996))–evinced the intent of the legislature to include the liquid within which the cocaine was diluted to calculate the weight of the contraband.  
Butler
, 304 Ill. App. 3d at 758.  The court held that including the liquid in the weight calculation was not cruel, degrading, or wholly disproportionate to the offense.  
Butler
, 304 Ill. App. 3d at 759. 

In the present case, the defendant stipulated that during the search of his home, law enforcement agents found several containers containing a clear liquid and took samples of the liquid, which a forensic chemist later identified as methamphetamine, and that the substances weighed more than 900 grams.  The plain language of the statute is clear: it is a Class X felony to manufacture or possess with the intent to manufacture methamphetamine, and a defendant shall be sentenced to at least 15 years in prison with respect to "900 grams or more of any substance containing methamphetamine."  720 ILCS 570/401(a)(6.5)(D) (West 2000).  Methamphetamine is its ingredients, 
i.e.
, anhydrous ammonia, pseudoephedrine, and lithium, combined in a mixture, whether cooked to its final, marketable form or not.  The defendant combined the methamphetamine ingredients into the container; thus, the mixture in the container constituted a "substance containing methamphetamine."  See
 Butler
, 304 Ill. App. 3d at 758 (a mixture is encompassed within the definition of a substance).  The defendant was properly convicted and sentenced, even though the substance containing methamphetamine had not yet reached its final, marketable form.  See 
United States v. Beltran-Felix
, 934 F.2d 1075, 1076 (9th Cir. 1991) (the defendant was properly sentenced for the possession of a substance containing methamphetamine even though the substance the defendant was cooking had not yet reached a final, marketable form). 

The defendant also stipulated that the police did not contaminate the evidence in any way.  The shaking of the ingredients to obtain a police sample was irrelevant, even though the ingredients had separated within the container.  By initially combining the methamphetamine ingredients into the container, the defendant created, and possessed with the intent to manufacture, the "substance containing methamphetamine" in violation of Illinois law (720 ILCS 570/401(a)(6.5)(D) (West 2000)).  After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the defendant knowingly possessed with the intent to manufacture 900 grams or more of a substance containing methamphetamine.

Ineffective Assistance of Counsel

The defendant also alleges that he was denied the effective assistance of counsel because counsel entered into an erroneous stipulation that the police did not contaminate the evidence and because counsel failed to enter a lab report into the record for support of the allegation in the defendant's posttrial motion that the amounts delineated on the lab report were not the same as the amounts confiscated from the defendant's home.

To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's representation fell below an objective standard of reasonableness and that counsel's substandard representation so prejudiced the defense that the defendant was denied a fair trial.  
Strickland v. Washington
, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); 
People v. Albanese
, 104 Ill. 2d 504, 525 (1984).  To show prejudice, the defendant must establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

We rejected the defendant's argument that the police officer's shaking the container of the substance containing methamphetamine amounted to contamination.  The defendant suffered no prejudice with regard to this assertion.

Additionally, we are unable to ascertain whether the defendant was prejudiced as a result of the alleged inconsistencies in a lab report that his counsel failed to include as a part of the record at the trial because the lab report is not a part of the record on appeal.  It is the appellant's responsibility to provide an adequate record on appeal, and in the absence of a complete record, the court is compelled to assume that the missing evidence supports the court's decision.  See 
Foutch v. O'Bryant
, 99 Ill. 2d 389, 394 (1984); 
People v. Miszkiewicz
, 236 Ill. App. 3d 411, 419 (1992).  Thus, we again conclude that the defendant suffered no prejudice.

Criminal Drug Conspiracy Conviction

The defendant contends that his conviction for criminal drug conspiracy must be reversed where he was also convicted of unlawful manufacture of a controlled substance.  The defendant requests that the cause be remanded for a new sentencing hearing.    Although the defendant waived this issue, the State concedes that we may review this issue as plain error (134 Ill. 2d R. 615(a)) and confesses error.  See 720 ILCS 5/8-5 (West 2002) ("No person shall be convicted of both the inchoate [offense] and the principal offense"). 

"Where a defendant is convicted of multiple offenses, reversal of one conviction does not 
per se
 require that the defendant be resentenced on the remaining conviction or convictions, as long as the record shows that the trial court considered the offenses separately and sentenced the defendant separately on each offense.  [Citation.]"  
People v. Sonntag
, 238 Ill. App. 3d 854, 857 (1992).  

The trial court explained that it was imposing 19-year prison sentences because the defendant's methamphetamine laboratory caused or threatened serious harm, because the defendant's criminal history was substantial, and because the defendant threatened to kill Agent Champion.  Although the sentences were 19 years for each conviction, the record shows that the trial court considered the offenses separately and sentenced the defendant separately on each offense.  We are satisfied that the sentences imposed were not so interrelated that a new sentencing hearing is required.  See 
Sonntag
, 238 Ill. App. 3d at 857.

We therefore vacate the defendant's conviction and sentence for criminal drug conspiracy.

Credit

The defendant argues that he is entitled to credit toward his fines for the time he spent in custody prior to sentencing.  The State concedes that the defendant is entitled to a 
per diem
 credit against either the street value fine or the drug assessment for the 375 days that he spent in preconviction custody.

A defendant who is incarcerated on a bailable offense, who does not supply bail, and who, upon conviction, is assessed a fine is entitled to a $5 credit toward that fine for each day spent incarcerated prior to sentencing.  725 ILCS 5/110-14 (West 2002).  This credit may be applied against either the statutory assessment or the street value fine, but not both.  See 
People v. Otero
, 263 Ill. App. 3d 282, 287 (1994).  In no case shall the amount so allowed or credited exceed the amount of the fine.  725 ILCS 5/110-14 (West 2002).

The sentencing order indicates that the defendant was entitled to 375 days' credit for time served, but the order fails to indicate that the defendant was credited with that time against his fine.  The trial court ordered the defendant to pay a $3,000 mandatory drug assessment and a $100 street value fine.  We remand this cause to the circuit court with directions to credit $1,875 against the defendant's drug assessment.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Montgomery County is affirmed in part and vacated in part, and the cause is remanded.  

Affirmed in part and vacated in part; cause remanded. 

KUEHN and DONOVAN, JJ., concur.

                                      NO. 5-02-0636

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Montgomery County.  

)

v. ) No. 01-CF-160

)   

SCOTT A. HAYCRAFT, ) Honorable

) John P. Coady,

Defendant-Appellant. ) Judge, presiding. 

___________________________________________________________________________________

Opinion Filed
: June 4, 2004

___________________________________________________________________________________

Justices
: Honorable Terrence J. Hopkins, J.

Honorable Clyde L. Kuehn, J.

Honorable James K. Donovan, J.

Concur

___________________________________________________________________________________

Attorneys
 Daniel M. Kirwan, Deputy Defender, Rita K. Peterson, Assistant Defender, 

for
 Office of the State Appellate Defender, Fifth Judicial District, 730 E. Illinois

Appellant
 Highway 15, P.O. Box 2430, Mt. Vernon, IL 62864

___________________________________________________________________________________

Attorneys
 Lisa Madigan, Attorney General, State of Illinois, Gary Feinerman, Solicitor General, 

for
 Linda Woloshin, Lisa A. Smith, Assistant Attorneys General, 100 West Randolph,

Appellee
 12th Floor, Chicago, IL 60601

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 06/04/04.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.