No. 2--07--0449      Filed: 8-12-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 06--CF--1232 |
| CLAYTON THORNBURG, | ) ) | Honorable Grant S. Wegner, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BOWMAN delivered the opinion of the court:

After probation officers recovered pornographic material from his bedroom and computer on January 4, 2005, defendant, Clayton Thornburg, was charged with three counts of possession of child pornography (720 ILCS 5/11--20.1(a)(6) (West 2004)). Defendant subsequently filed a motion to quash his arrest and suppress evidence. On April 5, 2007, the circuit court granted the motion, finding that defendant's consent to the home search was involuntary and that the probation officers lacked a reasonable suspicion to perform the search. The State filed a certificate of impairment and timely appealed under Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)). It argues that (1) the officers had a reasonable suspicion to search defendant's bedroom and computer since defendant was already on probation, and (2) defendant consented to the searches. We affirm in part, reverse in part, and remand for further proceedings.

I.  BACKGROUND

On March 13, 2007, a hearing on defendant's motion to suppress was held. Defendant testified as follows. Defendant had pleaded guilty to indecent solicitation of a child and was on probation with Cook County when probation officers arrived at his residence on January 4, 2005. At that time, defendant resided in Aurora with his brother, Robert. The officers, Wendy Joslin and Anibal Ilarraza, stated that they were there to do a home check and to search the premises. Defendant allowed them in, and the officers went to the garage first and then to the living room. After looking around the living room, Ilarraza told defendant that he wanted to look in his bedroom, and defendant complied. In the bedroom, Ilarraza asked who the desk belonged to. Defendant stated that it belonged to Robert. Ilarraza then opened the desk drawer and found three adult pornographic DVDs. The bedroom had a television but no DVD player in it. They returned to the living room and Ilarraza stated that he was going to search the computer. Robert was sitting in front of the computer and stated that Ilarraza could not search the computer. Ilarraza stated that he was going to search it anyway. He pulled a disk from his pocket, turned the computer on, and inserted the disk. Ilarraza claimed that there were pornographic images of children on the computer. Joslin then called the Aurora police department. The police arrived and removed the computer from the home.

Defendant stated that he thought that he had to allow the officers in to search his home. He did not feel that he had a choice to refuse the search, because he believed refusing would result in a probation violation and jail. Neither the probation officers nor the Aurora police officers presented a search warrant to defendant.

On cross-examination, defendant admitted that he had agreed to and was aware of various probationary conditions as part of his plea agreement in Cook County. Defendant admitted to signing a probation agreement and a "Computer Use Agreement" after the terms were discussed with

him. Those agreements were admitted into evidence. One condition prohibited him from possessing any adult pornography. Another condition prohibited him from using the Internet for sexual purposes. He admitted that the computer was in plain view in the living room but denied giving Ilarraza permission to turn it on. Robert stated that he did not want the computer searched. Defendant admitted that he never told the officers to stop searching but stated that he did not believe that he had the option.

Ilarraza testified as follows. He arrived with Joslin to visit defendant's home pursuant to defendant's probation conditions. Joslin knocked on the door and told defendant that they were there to conduct a home visit. Defendant let them in and they walked into the living room. Ilarraza asked defendant where his bedroom was, and defendant led him to his bedroom. Ilarraza looked through defendant's dressers and found three DVDs that appeared to be adult pornography, based on the covers and disks inside. He believed there was a television and a DVD player in the bedroom. He asked defendant if the DVDs belonged to him, and defendant answered affirmatively.

After finding the DVDs, Ilarraza returned to the living room and asked defendant if he had Internet access. Defendant said that he did. Ilarraza then said that he would be conducting a search on the computer. He also said to defendant and Robert, "if you don't mind me looking through your computer, I want to search it to make sure there's nothing that's not supposed to be on there." Both defendant and Robert gave him permission. He turned the computer on and inserted a specialized disk that retrieves every image that has ever been on a computer. Ilarraza immediately began seeing adult and child pornographic images on the screen. Joslin asked defendant if "that was his stuff," and he responded that it was.

On cross-examination, Ilarraza admitted that he did not have a warrant to search the house and had no information that defendant had violated any terms of his probation. Ilarraza believed that he was able to search the home because of the probation paperwork that defendant signed originally. He admitted that the terms of the probation agreement stated that defendant gave permission for officers to enter and search his home "when there is reasonable suspicion to require it." Ilarraza stated that "the reasonable suspicion [is] that they're already convicted of a sexual offense," and his presumption is that there is "always reasonable suspicion." He admitted that, before he opened any drawers, there was nothing unusual about defendant's bedroom. He admitted that there was nothing unusual about the computer before he turned it on and inserted the special software. However, after discovering the DVDs, he became suspicious about the computer.

Joslin testified as follows. She arrived with Ilarraza at defendant's residence and informed him that she was there to perform a home visit. Defendant allowed them in. She searched the living room while Ilarraza searched defendant's bedroom. She observed a desk with a computer and some books on it. She looked through the books to make sure there was no pornographic material. Ilarraza returned to the living room with three pornographic DVDs that he retrieved from the bedroom. Ilarraza then asked for permission to search the computer, and defendant said yes. Joslin stated that neither defendant nor Robert objected to the search of the computer. Ilarraza then turned the computer on and inserted the specialized disk. Joslin observed images of child pornography and adult pornography.

On cross-examination, Joslin admitted that she was not performing the home visit because she had information that defendant had violated his probation or committed any crime. She admitted that she did not have a warrant and that she told defendant that they were there "for a field visit and

[they] were going to search his home." If defendant had refused the visit, Joslin would have left and reported the refusal as a violation of his probation. When she entered the living room, the computer was not turned on and there were no images on the screen. There was nothing unusual about the computer. After Ilarraza searched the computer, Joslin called the Aurora police department. Aurora police officers arrived and confiscated the computer.

On April 5, 2007, the trial court granted defendant's motion, finding (1) that the probation officers had no reasonable suspicion to conduct the searches, and (2) that defendant's consent was involuntary. First, it noted certain discrepancies in the testimony of the officers, including whether they asked for permission or told defendant that they would be searching the home and whether the DVDs were found in a desk or a dresser. It found that Ilarraza's belief that he always had a reasonable suspicion violated the law and that the terms of the probation agreement required that a search be performed only when there is a reasonable suspicion. The trial court concluded that the officers did not have a reasonable suspicion to search the desk/dresser[1] where the DVDs were discovered. Without the reasonable suspicion created by the presence of the DVDs, they would not have had a reasonable suspicion to search the computer. Second, the trial court determined that defendant's consent was not voluntary because he was not aware of his right to refuse the search. Defendant's perceived lack of choice created an acquiescence to the officers' claim of authority rather than a true voluntary consent.

## II. ANALYSIS

---

[1] It is unclear from the testimony whether the DVDs were discovered in a desk or a dresser. We refer to it as "desk or dresser" or "desk/dresser," as the distinction is irrelevant to the analysis.

When reviewing a trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. People v. Sorenson, 196 Ill. 2d 425, 431 (2001). We review the trial court's factual findings under a manifest weight of the evidence standard, and we review de novo the ultimate ruling as to whether suppression is warranted. Sorenson, 196 Ill. 2d at 431. Under these rules, we review whether the officers had reasonable suspicion to perform the searches and, if not, whether defendant voluntarily consented to the searches.

### A. Reasonable Suspicion

The burden of proof is on the defendant at a hearing on a motion to suppress evidence. People v. Lampitok, 207 Ill. 2d 231, 239 (2003). If the defendant makes a prima facie case that the evidence was obtained through an illegal search, then the State can counter with its own evidence. Lampitok, 207 Ill. 2d at 239. Here, defendant alleged at the hearing that the probation officers did not have a reasonable suspicion before searching his bedroom. Thus, the three DVDs found in a drawer in the bedroom were inadmissible because they were illegally obtained, and they could not be the basis for a reasonable suspicion to search his computer. The State argued, alternatively to consent, that the officers had a reasonable suspicion because of defendant's criminal history. The trial court determined that Joslin and Ilarraza admitted that they had no reasonable suspicion to search the desk/dresser in defendant's bedroom and that defendant's history was insufficient on its own to support a reasonable suspicion. Further, without a reasonable suspicion in regard to the DVDs, there was no reasonable suspicion to search the computer.

Under the fourth amendment, a search conducted without a warrant issued upon probable cause is unreasonable. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858, 93 S. Ct. 2041, 2043 (1973). However, imposing the traditional warrant and probable-cause

requirements on law enforcement officials carrying out the special needs of the probation system would unduly interfere with the effective administration of the system. Lampitok, 207 Ill. 2d at 250. Probationers have a reduced expectation of privacy compared to ordinary citizens, because they are criminal offenders. Lampitok, 207 Ill. 2d at 251. Although a probationer has a reduced expectation of privacy, a search of his home remains a significant intrusion on his privacy and a search without any reasonable suspicion would be constitutionally unreasonable. See Lampitok, 207 Ill. 2d at 252 (imposing a reasonable suspicion requirement on probation officers even where probation agreement contained no such requirement); cf. People v. Wilson, 228 Ill. 2d 35, 52 (2008) (finding that the fourth amendment does not prohibit a police officer from conducting a suspicionless search of a parolee where parole agreement contains no limit on searches of parolee's person, property, or residence but recognizing a distinction between probationers and parolees; parolees enjoy a much lesser expectation of privacy than probationers because they pose a higher risk to the public).

Reasonable suspicion exists when " 'articulable facts which, taken together with the rational inferences from those facts, *** warrant a reasonably prudent officer' to investigate further." Lampitok, 207 Ill. 2d at 255, quoting Maryland v. Buie, 494 U.S. 325, 334, 108 L. Ed. 2d 276, 286, 110 S. Ct. 1093, 1098 (1990). While reasonable suspicion is a less stringent standard than probable cause, it requires more than a mere hunch on the part of the officer. Lampitok, 207 Ill. 2d at 255. Further, an officer's good-faith belief that he has sufficient suspicion to justify the intrusion is inadequate on its own to satisfy the objective reasonable suspicion standard. Lampitok, 207 Ill. 2d at 255. In evaluating whether reasonable suspicion exists, the court should consider the quality and content of the information known to the officers as well as the reliability of the source of the information. Lampitok, 207 Ill. 2d at 257.

In Lampitok, probation officers searched a motel room occupied by the probationer and the defendant, which resulted in the seizure of drugs and weapons and the defendant's arrest. Lampitok, 207 Ill. 2d at 255. The officers believed that the probationer was violating her probation because she moved into the motel room without notifying them and was residing with the defendant, who they believed was a drug user. Lampitok, 207 Ill. 2d at 257. The supreme court held that the officers did not have a reasonable suspicion to search the motel for drugs or weapons. Lampitok, 207 Ill. 2d at 257. First, it concluded that the officers had no specific information that the defendant was a drug user or possessed weapons, because their belief was based on a remote prior encounter that did not result in the defendant's arrest for any illegal activity. Lampitok, 207 Ill. 2d at 256. Second, while the officers had a reasonable suspicion that the probationer had changed residences and could search the motel to determine whether she had moved, they could not extend that suspicion to a search for weapons or drugs. Lampitok, 207 Ill. 2d at 259. The officers were allowed to search for the probationer at the motel but searching between a mattress and box spring of a bed went beyond the scope of that search. Lampitok, 207 Ill. 2d at 260. Therefore, the drug and weapon evidence was properly suppressed by the trial court. Lampitok, 207 Ill. 2d at 262.

In People v. Haycraft, 349 Ill. App. 3d 416, 419 (2004), a parole officer visited the defendant's home after he had tested positive for amphetamines three times while on parole for several drug-related charges.[2] Other parolees told the officer that the defendant was cooking methamphetamine but nothing indicated that he would be doing so at the time of her visit. Haycraft, 349 Ill. App. 3d at 419. Upon arriving at the defendant's home, the officer smelled an extremely

---

[2]At the time of the Haycraft opinion, searches on parolees and probationers both required a reasonable suspicion, making the analysis helpful.

strong chemical odor that she identified as methamphetamine being cooked. Haycraft, 349 Ill. App. 3d at 419. The officer proceeded to walk inside the home and saw a man in the kitchen. As she walked into the kitchen, she observed a semiclear liquid cooking in pans on the stove and smelled the odor. Haycraft, 349 Ill. App. 3d at 419. The court stated that the parole officer's home visit was justified as home visits were part of the defendant's parole agreement and supported the parole system's special need to monitor criminal offenders. Haycraft, 349 Ill. App. 3d at 424. The officer's entry into the home and into the kitchen was reasonable at its inception and in its scope. Haycraft, 349 Ill. App. 3d at 424. The evidence obtained thereafter, including the clear liquid cooking on the stove, was in the officer's plain view and gave the officer probable cause to search the remainder of the house for other drugs or evidence of criminal activity. Haycraft, 349 Ill. App. 3d at 424.

In this case, like in Lampitok and Haycraft, Joslin and Ilarraza had the right to visit defendant at his home per his probation agreement. However, the officers admitted that they did not have any information or indication that defendant was violating his probation or that he was involved in any type of criminal activity prior to the home visit. As in Lampitok, where officers could not search a mattress without a reasonable suspicion that the probationer's home contained drugs or weapons, Ilarraza could not search defendant's desk or dresser drawers, or later the computer, for pornographic materials without a reasonable suspicion that defendant possessed them. Unlike in Haycraft, the DVDs that Ilarraza seized were not in plain view when he entered defendant's bedroom. Ilarraza provided no reason for his search other than that he always had a reasonable suspicion to search probationers' homes because of their criminal histories. We agree with the trial court that Ilarraza's belief is not based on fourth amendment law as applied to probationers, and the officers gave no other basis for a reasonable suspicion to search the desk or dresser drawers. Without a reasonable

suspicion for the search that resulted in the seizure of the DVDs, the officers had no cause for the computer search that was performed later. Therefore, the trial court did not err in finding that the searches were not based upon reasonable suspicion.

### B. Consent

The trial court also determined that defendant's consent was "no more than an acquiescence to the claim of authority contained within the probation conditions." The court ruled that defendant's consent to the search was not voluntary and that his capacity for self-determination was critically impaired by his perception of the probation conditions. We agree as to the search of the desk/dresser but disagree as to the computer, finding that the trial court failed to consider the impact of the Computer Use Agreement.

An established exception to the warrant requirement is a search that is conducted with voluntary consent. Schneckloth, 412 U.S. at 219, 36 L. Ed. 2d at 858, 93 S. Ct. at 2043-44. It is the State's burden to show by a preponderance of the evidence that the consent was voluntarily given. People v. Alvarado, 268 Ill. App. 3d 459, 464 (1994). Whether consent to a search was voluntary is a question of fact to be determined from the totality of the circumstances. Schneckloth, 412 U.S. at 227, 36 L. Ed. 2d at 863, 93 S. Ct. at 2048. The two competing concerns that must be accommodated in determining the voluntariness of consent are: (1) the legitimate need for the search and (2) the equally important requirement of assuring the absence of coercion. Schneckloth, 412 U.S. at 227, 36 L. Ed. 2d at 863, 93 S. Ct. at 2048. While knowledge of the right to refuse consent is one factor to be considered, the State does not need to establish such knowledge to prove an effective consent. Schneckloth, 412 U.S. at 227, 36 L. Ed. 2d at 864, 93 S. Ct. at 2048.

Here, the State argues that defendant consented to the searches when the officers asked permission before each and defendant gave it. Defendant argues that he felt that he had no choice but to consent to the searches because the officers stated that they were there to search his home and because of the probation agreement that he signed. The probation agreement contained the following provisions:

"5. PERMIT THE PROBATION OFFICER TO VISIT THE DEFENDANT AT HIS HOME OR ELSEWHERE TO THE EXTENT NECESSARY TO DISCHARGE THE OFFICER'S DUTIES.

* * *

11. THAT THE DEFENDANT COMPLY WITH THE SPECIFIC RULES AND REGULATIONS OF INTENSIVE SEX OFFENDER SUPERVISION WHICH ARE:

* * *

L. YOU SHALL SUBMIT TO SEARCHES OF YOUR PERSON, RESIDENCE, PAPERS, AUTOMOBILE AND/OR EFFECTS AT ANY TIME SUCH REQUESTS ARE MADE BY THE PROBATION OFFICER WHEN THERE IS REASONABLE SUSPICION TO REQUIRE IT, AND CONSENT TO THE USE OF ANYTHING SEIZED AS EVIDENCE IN A COURT PROCEEDING."

Under these terms, defendant was required to allow his probation officers to visit his home. He was also required to submit to a search of his "person, residence, papers, automobile and/or effects" when officers had a reasonable suspicion to require it. Thus, defendant could refuse without consequence a request to search his dresser or desk drawers when requested without any reasonable suspicion.

At the hearing, the officers provided conflicting testimony regarding whether Joslin stated that they were there to search the home or whether she asked defendant for permission to search the home. Joslin admitted on cross-examination that she told defendant that they were there "for a field visit and [they] were going to search his home." Ilarraza testified that Joslin asked for permission. Defendant stated that the officers told him that they were there to search the home. He also testified that he believed that he had to permit the search or risk imprisonment for violating his probation. By virtue of its ruling, the trial court found defendant's testimony more credible than Ilarraza's. We shall not disturb the trial court's factual findings unless they are against the manifest weight of the evidence. A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented. People v. Deleon, 227 Ill. 2d 322, 332 (2008). We give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses. Deleon, 227 Ill. 2d at 332. The trial court's acceptance of defendant's testimony over Ilarraza's is not against the manifest weight of the evidence, especially where the officers gave conflicting testimony. We agree with the trial court that consent to search the bedroom, under the circumstances of this case, was involuntary.

The same is not true for consent to search the computer. The Computer Use Agreement was admitted into evidence during the suppression hearing. It provided that defendant was subject to: "unannounced examinations of his computer, software and other electronic devices to which [he had] access," the installation of equipment or software to monitor his computer use, "examination[s] at any time," and seizure if any prohibited materials were found. However, the trial court did not mention and made no specific factual findings regarding the Computer Use Agreement when it ruled

on the motion to suppress. We therefore review <u>de novo</u> only its ultimate ruling that defendant did not voluntarily consent to the computer search.

We first address defendant's argument that, by failing to argue it in its brief, the State waived the argument that defendant consented to computer searches when he signed the Computer Use Agreement. While defendant's argument may have technical merit, reviewing courts may override the waiver doctrine in the interest of justice and for the maintenance of sound precedence. <u>People v. Wilson</u>, 155 Ill. 2d 374, 379 (1993); see also <u>Ward v. Community Unit School District No. 220</u>, 243 Ill. App. 3d 968, 974-75 (1993) (finding waiver was limitation only on parties and reviewing court had power to decide any issue where record was sufficient to resolve the issue). In this case, the State argues that defendant consented to the computer search when Ilarraza asked about his access to the computer and the Internet and for permission to search. While it did not argue the Computer Use Agreement's effect on defendant's consent, the record is sufficient for us to consider the document's impact on the voluntariness of defendant's consent. Therefore, in the interests of justice and sound precedence, we decline to disregard the Computer Use Agreement.

Based on the plain language of the agreement, defendant agreed as part of his probation program to submit to a computer search at any time. The agreement did not require that probation officers have a reasonable suspicion to perform such a search. While a reasonable suspicion has been held to be required for a general home search even where no such requirement is contained in the probationer's agreement (<u>Lampitok</u>, 207 Ill. 2d at 252), suspicionless searches have been upheld in cases of parolees. See <u>Samson v. California</u>, 547 U.S. 843, 854, 165 L. Ed. 2d 250, 260, 126 S. Ct. 2193, 2200 (2006) (holding suspicionless search of parolee's person was legal where searches of parolees supported the State's significant interest in preventing recidivism and protecting the

public); People v. Wilson, 228 Ill. 2d 35, 47 (2008) (allowing suspicionless search of parolee's home where consent to such searches was required by the parolee's mandatory supervised release agreement).

Here, we are not dealing with a parolee or a suspicionless search of a home in general but, rather, a suspicionless search of a probationer's computer. A probationer does not enjoy the absolute liberty that every citizen enjoys but only conditional liberty based on restrictions contained in a probation agreement. Griffin v. Wisconsin, 483 U.S. 868, 874, 97 L. Ed. 2d 709, 718, 107 S. Ct. 3164, 3169 (1987). The restrictions and supervision placed on probationers are meant to assure that the probationary period actually serves as a period of rehabilitation and that the community is not harmed by the probationer's presence. Griffin, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169. Supervision is a "special need" of the State that permits a "degree of impingement upon privacy that would not be constitutional if applied to the public at large." Griffin, 483 U.S. at 875, 97 L. Ed. 2d at 718, 107 S. Ct. at 3169. The special needs of the State of Illinois's probation program are set forth in the Unified Code of Corrections (Code). Section 5--6--3(b) of the Code (730 ILCS 5/5--6--3(b) (West 2004)) lists numerous conditions that a trial court may place on a probationer, "in addition to other reasonable conditions relating to the nature of the offense or the rehabilitation of the defendant as determined for each defendant in the proper discretion of the Court." The list includes conditions such as home confinement, psychiatric or psychological treatment, and prohibition from entering certain geographical areas or having contact with certain persons. 730 ILCS 5/5--6--3(b) (West 2004).

In Lampitok, the probationer's agreement included the condition that "the Defendant shall submit to a search of her person, residence, or automobile at any time as directed by her Probation

Officer to verify compliance with the conditions of this Probation Order." Lampitok, 207 Ill. 2d at 236. Probation officers relied on this order to search a motel room in which the probationer was allegedly living, while only her roommate was present. Lampitok, 207 Ill. 2d at 235-36. While the probation order did not impose a reasonable suspicion requirement, the court held that such a search was unconstitutional if done without a reasonable suspicion. Lampitok, 207 Ill. 2d at 253. In reaching this conclusion, the court sought to balance the level of intrusion on personal privacy against the degree of need for the search to promote legitimate government interests. Lampitok, 207 Ill. 2d at 249.

The Lampitok court used United States v. Knights, 534 U.S. 112, 119-120, 151 L. Ed. 2d 497, 505, 122 S. Ct. 587, 591-92 (2001), for guidance. In Knights, the court stated that the defendant had a significantly diminished expectation of privacy because of his acceptance of a broad search condition in his probation order. Knights, 534 U.S. at 119-20, 151 L. Ed. 2d at 505, 122 S. Ct. at 591-92. The Lampitok court determined that the order in Knights was broader than the order in its case because the Knights order did not restrict searches to those ordered by the probationer's assigned probation officer and to those verifying compliance with probation conditions. Lampitok, 207 Ill. 2d at 251. The Knights court acknowledged that there was a correlation between the terms of the probation search condition and the degree of the probationer's expectation of privacy, which affects the level of individualized suspicion required to justify a search. Lampitok, 207 Ill. 2d at 251, citing Knights, 534 U.S. at 120 n.6, 151 L. Ed. 2d at 505 n.6, 122 S. Ct. at 592 n.6. The Knights Court ultimately found that reasonable suspicion existed and did not have to decide whether a suspicionless search was permitted. Knights, 534 U.S. at 122, 151 L. Ed. 2d at 507, 122 S. Ct. at 593. The Lampitok court used this analysis and determined that, because the order there was less broad than

the order in Knights, the probationer's expectation of privacy was not as diminished. Lampitok, 207 Ill. 2d at 251. The court then noted that, in certain instances, suspicionless, warrantless searches, such as in mandated drug and alcohol testing, have been upheld:

" 'Exceptions to the requirement of individualized suspicion are generally appropriate only where the privacy interests implicated by a search are minimal and where "other safeguards" are available "to assure that the individual's reasonable expectation of privacy is not 'subject to the discretion of the official in the field.' " Delaware v. Prouse, 440 U.S. 648, 654-55 (1979) (citation omitted).' " Lampitok, 207 Ill. 2d at 254, quoting New Jersey v. T.L.O., 469 U.S. 325, 342 n.8, 83 L. Ed. 2d 720, 735 n.8, 105 S. Ct. 733, 743 n.8 (1985).

In this case, we find that the Computer Use Agreement sufficiently eliminated defendant's expectation of privacy, such that he consented to a waiver of his fourth amendment rights, but only with respect to his computer. Defendant, by virtue of the reasonable suspicion requirement in his probation agreement, still enjoyed an expectation of privacy for the remainder of his home. The narrowness of the Computer Use Agreement and the probation agreement's reasonable suspicion requirement safeguarded defendant from general suspicionless searches. In balancing the level of intrusion on personal privacy against the degree of need for the search to promote legitimate government interests, we find that a search per the Computer Use Agreement is a much more limited intrusion than a suspicionless search of defendant's entire home and that it supports the government's strong interest in monitoring sex offenders, who often use computers to commit offenses. Defendant had been convicted of indecent solicitation of a child and had used his computer and Internet access to commit the crime. The probation conditions that he not use the Internet for any sexual purposes and that he agree to unannounced computer searches at any time are not unreasonable given

defendant's crime and the limited scope of the conditions. Such conditions also comply with section 5--6--3(b) of the Code, which provides for reasonable conditions that relate to the nature of the offense. Under the facts of this case, the Computer Use Agreement, including its provision that allowed for suspicionless searches of defendant's computer, was an enforceable probationary condition. Thus, the search of defendant's computer was valid.

### III. CONCLUSION

In conclusion, we find that the probation officers did not have a reasonable suspicion to search defendant's bedroom and that his consent to that search was involuntary. However, we find that the Computer Use Agreement that defendant signed as part of his conditional probation was valid and that, thus, defendant's consent to the search of his computer was voluntary. Therefore, we affirm the judgment of the circuit court of Kane County in suppressing the DVDs, reverse the judgment suppressing the contents of the computer search, and remand the cause for further proceedings. Affirmed in part and reversed in part; cause remanded.

McLAREN and ZENOFF, JJ., concur.