(No. 41811.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* JACK DILLON, Appellant.

*Opinion filed January 21, 1970.—Rehearing denied March 23, 1970.*

WARD, J., took no part.

GETER & GETER, of Chicago, (HOWARD D. GETER, SR. and HOWARD D. GETER, JR., of counsel,) for appellant.

WILLIAM J. SCOTT, Attorney General, of Springfield, and EDWARD V. HANRAHAN, State's Attorney, of Chicago, (MORTON E. FRIEDMAN, Assistant Attorney General, and ELMER C. KISSANE and PATRICK T. DRISCOLL, JR., Assistant State's Attorneys, of counsel,) for the People.

Mr. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Defendant was convicted in a Cook County circuit court bench trial under a two-count indictment charging him with possession of betting records and policy tickets, which constitute the offense of gambling under the Criminal Code. (Ill. Rev. Stat. 1965, ch. 38, par. 28—1, subpars. (a) (5) and (a) (8).) It is his contention on appeal that the evidence upon which he was convicted was illegally seized in the execution of a search warrant issued without probable cause, and that he was not proved guilty beyond a reasonable doubt.

Acting pursuant to the search warrant, the arresting officers discovered the defendant seated at a card table upon which were located policy writings, currency and other paraphernalia. It is the seizure of those materials to which defendant objects, claiming that the affidavit of one of the officers, upon which the search warrant was issued, was defective.

The officer's affidavit was based upon information that a policy station was in operation at a location which had previously been raided. This information was provided by a reliable woman informant whose information had always been correct and had led to three prior convictions and four arrests then pending trial. On three occasions, after receipt

of this information, the officers maintained surveillance of the location, and observed numerous persons visiting the premises for a matter of minutes at a time. During the second period of surveillance, the informant's purse and coat pockets were found to be free of any policy result tickets, whereupon she was directed to enter the premises and return with such a ticket. She did so. It is now contended that the affidavit is defective on several bases: the officers did not preclude by an exhaustive search of the informant, the possibility that the ticket which she produced was on her person prior to entering the premises; there was no explicit statement that the ticket produced had been obtained on the premises; there was no statement that the informant saw any policy tickets or other policy paraphernalia on the premises; and there was no statement as to where the informant obtained her information.

We are directed by defendant to the principles set forth by the United States Supreme Court in *Aguilar* v. *Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509, and further articulated in *Spinelli* v. *United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584. It is contended that the affidavit in the instant case fails to satisfy the requirements of probable cause in that it does not show that the informant's tip was based upon information she obtained in a reliable way. We agree that the source of her information is nowhere stated in the affidavit, but we find that the affidavit nevertheless meets the tests laid down in *Aguilar* and *Spinelli.*

The affidavit involved in *Aguilar* stated flatly, "Affiants have received reliable information from a credible person and do believe * * *"; there was no corroboration or surveillance reported in the affidavit. This was the setting from which arose the reasonable requirement that facts and circumstances must be stated which will give the issuing magistrate reason to conclude that the informant's tip is well-founded. (*Aguilar* v. *Texas,* 378 U.S. 108, 109, 113, 12 L. Ed. 2d 723, 725, 84 S. Ct. 1509, 1511, 1513.) This require-

ment was later clarified by the Supreme Court, noting that it applied, "Where, as here, the informer's tip is a necessary element in a finding of probable cause, * * *." (*Spinelli* v. *United States,* 393 U.S. 410, 415, 21 L. Ed. 2d 637, 643, 89 S. Ct. 584, 588.) It was pointed out that in the absence of a statement detailing the manner in which the information was gathered by the informant, corroboration of the tip could satisfy *Aguilar*. The affidavit in *Spinelli* did not relate the basis for the informant's tip and the tip was only meagerly corroborated by relatively unprobative observations. The Supreme Court concluded that, to meet the probable cause requirements, the affidavit "needed some further support * * * which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." (*Spinelli,* 393 U.S. at 418, 21 L. Ed. 2d at 644-5, 89 S. Ct. at 590.) The facts in *Draper* v. *United States,* 358 U.S. 307, 3 L. Ed. 2d 327, 79 S. Ct. 329, were tendered by the court as an example of satisfactory corroboration. While *Draper* tested probable cause for an arrest without a warrant, the court pointed out that the observation of circumstances accurately predicted by the informant there could have led a magistrate to "reasonably infer that the informant had gained his information in a reliable way." Thus, upon viewing such corroborative circumstances, the police officers in *Draper,* had probable cause for an arrest, since, "It was then apparent that the informant had not been fabricating his report out of whole cloth; since the report was of the sort which in common experience may be recognized as having been obtained in a reliable way, it was perfectly clear that probable cause had been established." (*Spinelli,* 393 U.S. at 417—8, 21 L. Ed. 2d at 644, 89 S. Ct. at 589, 590.) Looking now to the corroboration related in the affidavit before us, we find: (1) that the premises reported by the informant had been raided previously by the police; (2) the informant entered the premises and returned with a policy ticket as

requested by the officers; (3) during each of three separate period of surveillance, numerous persons were seen to visit the premises for a stay of only minutes. We note further the statement that the informant's tips had always been correct, and had resulted in three convictions and four arrests pending trial. The abundance of substantial corroboration for the informant's report here leads us to the conclusion that this affidavit could surely have prompted the judicial officer who issued the search warrant to "reasonably infer that the informant had gained [her] information in a reliable way," as required under *Aguilar* and *Spinelli*. Moreover, contrary to the urgings of defendant here, we find no support for his position in our decision of *People* v. *Parker*, 42 Ill. 2d 42. In that case we noted the absence, in the affidavits involved, of any statement as to whether the informant's prior tips had resulted in any convictions or arrests; nor was there any significant corroboration of the information received from the informant. We then held that, "Absent such factual allegations, or other grounds from which an issuing magistrate could reasonably credit the informer's accusation, the affidavits are defective and the warrants cannot stand." *Parker,* at 44-45.

As to the other alleged deficiences in the affidavit here defendant presents the proposition that the absence of an explicit statement that policy paraphernalia were seen on the premises by the informant deprives the issuing magistrate of probable cause to believe that such material would indeed be found there. Two cases are cited for this proposition, both involving affidavits wherein it was simply stated that the affiants had placed wagers on the premises. The issuance of search warrants for gambling paraphernalia was found to be unjustified in each case since there was no statement that the paraphernalia were observed on the premises. The first of these cited cases notes "the absence of any statement of the circumstances which would afford any basis for believing that any gambling paraphernalia

were concealed on the premises." (*United States* v. *Dubin* (D. Mass.), 217 F. Supp. 206, 208.) In the other case, the same court observed that "I cannot tell whether D'Alessandro saw any records or pads or other paraphernalia. If he never saw any such articles, I do not know on what basis he or the Commissioner formed their belief that such articles were present." (*United States* v. *Conway* (D. Mass.), 217 F. Supp. 853, 858.) The affidavit in the instant case is clearly not deficient in this respect, since it was stated here that the informant delivered a policy ticket to the affiant upon leaving the suspected premises. This ticket was then attached to the affidavit upon which the warrant was issued. The only reasonable conclusion which could be reached from such a demonstration is that other policy tickets and related policy paraphernalia would be found on the premises. Furthermore, the objection that only the informant's coat and purse were searched before she entered the premises from which a policy ticket was obtained, is without consequence here. We are concerned only with the existence of probable cause, and the "evidence" upon which the search warrant was issued need not be sufficient to convict the defendant. While the facts of the officer's search of the informant and her subsequent production of a policy slip may not, without a more complete search, prove beyond a reasonable doubt that policy slips were located in the premises, nevertheless the facts do assist in satisfying the requirement of probable cause. (*United States* v. *Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741.) In holding the search warrant valid here, we emphatically endorse the admonition of the United States Supreme Court that affidavits for search warrants "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion", and should not be found deficient through hypertechnical scrutiny. (*United States* v. *Ventresca,* 380 U.S. at 108, 13 L. Ed. at 689, 85 S. Ct. 746.) Thus, the trial court was acting properly in refusing to suppress the seized evidence, finding as it did

"that the constitutional mandate that no warrant shall issue without probable cause neither requires a showing of guilt beyond a reasonable doubt nor commands a naive evaluation of the facts by the judicial officer who issues the warrant * * *."

The defendant contends that he was not proved guilty, beyond a reasonable doubt, of the possession of gambling paraphernalia. He cites several Illinois cases which have dealt generally with standards for the proof of constructive possession of narcotics or stolen goods. (See, *e. g., People* v. *Pugh,* 36 Ill. 2d 435; *People* v. *Nettles,* 23 Ill. 2d 306; *People* v. *Embry,* 20 Ill. 2d 331; *People* v. *Dougard,* 16 Ill. 2d 603.) It is argued that the mere circumstance that defendant was discovered seated at a table upon which policy materials were sitting should not suffice to prove guilt under a theory of constructive possession, and there is no basis for finding actual possession. However, we find support for the finding in defendant's own statement at the time of arrest, which was testified to at trial by an arresting officer and acknowledged later by the defendant, that "I am not a writer, I am a runner." The judge undertook an extensive inquiry of the defendant as to his explanation for making the statement. Defendant stated that he had been a policy runner for a number of years, but had quit within the past year. It is apparent from the finding that the judge did not believe the defendant, and concluded, as the trier of fact, that defendant was in possession of the seized materials as charged. On the record before us that conclusion was warranted. *People* v. *Williams,* 36 Ill. 2d 505, 510.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.