(text box: 1) NO. 5-03-0475 

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the  

)  Circuit Court of

Plaintiff-Appellee, )  Marion County.

) 

v. )  No. 01-CF-404

)

ROGER W. McCARTY, )  Honorable

)  Patrick L. Duke, 

Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________

PRESIDING JUSTICE DONOVAN delivered the opinion of the court:

Following a stipulated bench trial in Marion County, Illinois, Roger McCarty (defendant) was convicted of unlawful manufacture of a controlled substance containing methamphetamine and possession with intent to deliver cannabis.  He was sentenced to concurrent prison terms of 15 years on the manufacturing conviction and 5 years on the intent-to-deliver conviction.  On appeal, defendant contends that (1) the search warrant was unconstitutional and the items seized should have been suppressed because the place to be searched and the items to be seized were not identified with particularity and because the scope of the warrant was too broad, (2) the Class X penalty provisions for unlawful manufacture of a controlled substance containing methamphetamine constitute unconstitutional disproportionate penalties, (3) his manufacturing conviction should be reduced to possession of a nominal amount of methamphetamine because the legislature did not intend to include the mass of incidental by-product or solvent within the definition of "substance containing methamphetamine", and (4) his conviction for possession of cannabis with intent to deliver should be reduced to simple possession because the State failed to prove the intent-to-distribute element beyond a reasonable doubt.

On December 20, 2001, Deputy Mark Rose, an officer in the Marion County sheriff's department, was on duty when he received a call from an unknown informant who claimed to have information about a methamphetamine lab and methamphetamine materials.  The informant, accompanied by Deputy Rose, appeared before a judge and signed a complaint for a search warrant under oath.  The judge issued a search warrant.

Deputy Rose, along with other sheriff's department officers, served the warrant that day.  Defendant and his girlfriend, Jeanyne Reynolds, were inside the trailer when the officers arrived.  They were detained during the search of the premises.  The search yielded numerous items, including containers of suspected methamphetamine materials, six bottles of pseudoephedrine pills, cannabis seeds, miscellaneous lithium batteries, miscellaneous drug equipment, a set of electronic scales, a one-hitter pipe, a one-hitter box, six cans of Coleman fuel, gas masks, and a locked metal box containing $3,030 and approximately 30 grams of suspected cannabis.    

Defendant and Jeanyne were arrested.  On December 21, 2001, defendant was charged by information with three felonies.  Count I alleged unlawful manufacture of less than five grams of a substance containing methamphetamine in violation of section 401(d) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/401(d) (West 2000)), a Class 2 felony.  Count II alleged unlawful possession of a methamphetamine chemical with intent to manufacture less than 15 grams of a substance containing methamphetamine in violation of section 401(d-5) of the Act (720 ILCS 570/401(d-5) (West 2000)), a Class 2 felony.  Count III alleged unlawful possession with intent to deliver more than 30 grams but not more than 500 grams of a substance containing cannabis in violation of section 5(d) of the Cannabis Control Act (720 ILCS 550/5(d) (West 2000)), a Class 3 felony.  

Subsequently, the methamphetamine-manufacturing counts were amended from Class 2 felonies to Class X felonies.  Count I was amended to allege that defendant had knowingly and unlawfully manufactured more than 900 grams of a substance containing methamphetamine in violation of section 401(a)(6.5)(D) of the Act (720 ILCS 570/401(a)(6.5)(D) (West 2000)).  Count II alleged that defendant had knowingly and unlawfully possessed with intent to manufacture more than 900 grams of a substance containing methamphetamine in violation of section 401(a)(6.5)(D).  The range of punishment for these Class X felonies is 15 to 60 years' imprisonment.  

Defendant filed a motion to suppress the evidence seized during the search of his girlfriend's trailer on December 20, 2001.  Defendant argued that the fruits of the search should be suppressed because the search warrant failed to describe with particularity the premises to be searched and the items to be seized.  Jeanyne Reynolds also filed a suppression motion.   

The hearing on defendant's motion to suppress was consolidated with the hearing on Jeanyne Reynolds' motion.  Deputy Rose was the first witness.  Deputy Rose testified that he received a Crime Stoppers call on December 20, 2001.  The caller indicated that he had information about a possible methamphetamine lab and materials for making methamphetamine.  Deputy Rose met with the informant.  He had not worked with the informant before.  The informant indicated that he had been to defendant's trailer earlier that morning and saw defendant smoking methamphetamine.  The informant also indicated that defendant had admitted to making methamphetamine at that location.  The informant described the location of the trailer he had visited that morning as "McCarty's trailer located approximately ¾ of a mile south of the intersection of Kinlou Rd[.] [and] O'Leary Rd.[,] being the 3rd traler [
sic
] east of O'Leary Rd[.,] and a camper located in the woods east of the trailer."  The informant completed a "John Doe" complaint for a search warrant.  Deputy Rose testified that his source went before the judge and provided the information under oath.  Deputy Rose did not vouch for his source before the court.  

The judge apparently found that the information supplied by the source was reliable, and the judge issued the warrant.  The warrant authorized a search of "the trailer of Roger McCarty located approximately ¾ of a mile south of the intersection of Kinlou Rd[.] [and] O'Leary Rd[.,] being the 3rd trailer east of O'Leary Rd[.,] and a camper located in the woods east of the trailer, including outbuildings, motor vehicles[,] [and] occupants" for "the following instrument [
sic
], articles[,] and things which have been used in the commission of, or which constitute evidence of, the offense of [unlawful possession] of methamphetamine."  The items to be seized included "any and all quantities of methamphetamine[,] records of drug transactions[,] drug paraphernalia[,] [and] United States currency."

Deputy Rose, along with other sheriff's department officers, served the warrant at approximately 1:45 p.m. the same day.  The trailer was located in an isolated, rural area, about five miles east of Kinmundy, Illinois.  The officers arrived at the property and secured subjects they saw milling outside the trailer.  Deputy Rose went to the trailer, knocked on the door, and announced that he had a warrant.  He waited about five seconds, and when no one responded, he entered the trailer.  Deputy Rose saw defendant's girlfriend, Jeanyne Reynolds, in the kitchen.  She was escorted from the trailer and detained outside.  Deputy Rose located defendant, who was in the shower.  Defendant's 13-year-old son was also in the trailer.  He was taken to his grandfather's residence.

Deputy Rose spoke with defendant after everyone was secure.  Defendant identified himself as Roger McCarty and gave his address as 7912 O'Leary Road.  Once everyone was secure, the officers conducted a search of the trailer and surrounding structures.  Numerous items were seized and catalogued in a search warrant inventory.      

Deputy Rose was questioned extensively about his narrative report describing the search.  The report had been prepared after the search.  In his report, Deputy Rose listed the address of the trailer searched as 7912 O'Leary Road.  Deputy Rose testified that prior to the search he had not known the address of the trailer.  When he served the warrant, he relied on the informant's description of the location of the trailer.  Deputy Rose stated that he was familiar with the layout of the property and knew which trailer the informant had described because he had previously served papers there.  Deputy Rose did not learn that the address of the searched premises was 7914 O'Leary Road until the preliminary hearing.  At the time the warrant was served, Deputy Rose was under the impression that Roger McCarty owned the trailer and lived there.  Deputy Rose also stated that he was not aware of a fourth trailer in the area.

Jeanyne Reynolds testified during the suppression hearing.  She stated that she owned the trailer located at 7914 O'Leary Road and that she resided there with her daughter and defendant's 13-year-old son.  Jeanyne testified that she had purchased the trailer from defendant's parents in 2000.  She stated that she and defendant were engaged.  Defendant stayed at her trailer from time to time, sometimes every other weekend.  He kept personal items there.  She did defendant's laundry at her place.  Jeanyne testified that she did not hear a knock prior to Deputy Rose's entry.  She said that Deputy Rose entered her home shouting, "Sheriff's department[;] I have a warrant to search this residence."  At that point she was handcuffed and taken outside.

Jeanyne was asked about the other trailers near hers.  She testified that defendant's father owned the trailer just south of her residence and that his postal address was 7910 O'Leary Road.  Defendant's trailer was the one nearest to O'Leary Road, and his address was 7912 O'Leary Road.  Jeanyne testified that a fourth trailer was located on the opposite side of the driveway, near a shed and a barn.  Defendant's sister and brother-in-law had placed the trailer there.  It still had a hitch and was up on wheels.  It had no postal address.  Jeanyne stated that the trailer was not used as a residence and was basically abandoned at the time of the search.

Defendant also testified at the suppression hearing.  He stated that he did not reside at Jeanyne's trailer at the time of the search.  Defendant said that he stayed at his father's trailer at times and at his sister's trailer at other times.  Defendant stated that his sister lived in the trailer at 7912 O'Leary Road.  He said that he had purchased the "fourth" trailer from his sister and brother-in-law in November 2001.  The trailer had been moved onto the property in October 2001.  Defendant said that he was at Jeanyne's trailer on the morning of December 20, 2001, but he denied spending the previous night there.  He did not hear the officer knock and announce before he entered the trailer.      

The court took the motion under advisement and later issued a written ruling denying defendant's motion to suppress.  The court found that Deputy Rose was credible when he said that had not seen the "fourth" trailer in the area and when he said he was familiar with the trailer described by the informant.  The court also accepted Jeanyne's testimony that the "fourth" trailer was unoccupied and did not appear to be a residential dwelling, that defendant's teenage son lived with her, and that defendant often stayed at her residence.  The court did not consider the address error in the police report to be significant because the trailer was not described by a postal address in the complaint or warrant, the postal addresses of the trailers were not in the usual ascending order, and the trailer was located in a rural area and had been described accurately in the complaint and affidavit.  Having resolved the factual discrepancies in favor of the State, the court found that the warrant had been properly executed. 

During the course of pretrial preparations, defendant also sought to dismiss counts I and II on the ground that the statutes on which the charges were based violated the proportionate penalties clause and his due process rights.  The motion was denied. 

Just before the trial began, defendant decided to waive his right to a trial by a jury.  He executed a signed waiver form and orally waived his right on the record.  Defendant then agreed to a stipulated bench trial.  The State recounted the evidence its witnesses would have offered.  Defendant stipulated to the State's rendition of its evidence.  Defendant did not testify and offered no additional evidence.  The court found defendant guilty of all three charges based on the stipulated evidence and set a date for sentencing.  Defendant did not file a posttrial motion.  During the sentencing hearing, the finding of guilt on count II was vacated pursuant to the rule against multiple convictions and punishments for lesser-included offenses arising from a series of incidental or closely related acts.  See 
People v. King
, 66 Ill. 2d 551, 363 N.E.2d 838 (1977).  The court entered a judgment on count I and count III and sentenced defendant to concurrent prison terms of 15 years on count I and 5 years on count III. 

On appeal, defendant contends that the search of the premises was unconstitutional

because the warrant failed the particularity requirements of the United States Constitution (U.S. Const., amend. IV) and the Illinois Constitution (Ill. Const. 1970, art. I, §6).  Defendant argues that the warrant failed to adequately describe the place to be searched and the items to be seized.  Defendant claims that the scope of the warrant was so impermissibly broad that it permitted the search and seizure of everyone and everything in the general neighborhood of the place where a crime was alleged to have occurred hours earlier.  Defendant contends that the informant provided no evidence that defendant was engaged in making methamphetamine on December 20, 2001.  Defendant argues that the information supplied by the informant might have been sufficient to support a warrant authorizing the search of a particular trailer for evidence of the use of methamphetamine, but not for evidence of methamphetamine materials or paraphernalia.  

Initially, the State contends that defendant waived the issue because he did not object at the trial and did not raise the issue in a posttrial motion.  The State argues that the description of the place to be searched was adequate to enable the officers to identify the targeted trailer with a reasonable degree of certainty.  In regard to the argument that the warrant was too broad, the State contends that there was probable cause to search the outbuildings, the cars, and the camper based on the information provided by the informant and based on the fact that the manufacture of methamphetamine requires the acquisition of dangerous materials which would likely be stored beyond the four walls of the trailer.  As to the warrant's authorization to search "occupants", the State first argues that defendant lacks standing to complain about the violation of another's constitutional rights and, alternatively, that the inclusion of "occupants" within the scope of the search warrant was superfluous and severable from an otherwise valid warrant.

According to the record, defendant filed a motion to suppress but during the bench trial failed to object to the introduction of the alleged illegally seized items.  He did not file a posttrial motion.  Generally, a reviewing court will not consider a defendant's claim of an illegal search and seizure unless the claim was first presented to the trial court.  
People v. Gornik
, 227 Ill. App. 3d 272, 279, 591 N.E.2d 39, 44 (1992).  The long-standing rule is that to preserve an issue for review, a defendant must both make a trial objection and file a written posttrial motion raising the issue.  
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130 (1988).  The waiver rule is a limitation on the parties and not on the reviewing court.  
People v. Williams
, 188 Ill. 2d 293, 301, 721 N.E.2d 524, 528 (1999).  In the interests of justice, we may relax the rule and address the issue.  
People v. Hughes
, 343 Ill. App. 3d 506, 510, 798 N.E.2d 763, 767 (2003).  We will do so in this case. 

In reviewing a challenge to a ruling on a motion to suppress, the trial court's findings of fact will not be disturbed unless they are against the manifest weight of the evidence or otherwise clearly erroneous, but its legal conclusions are subject to 
de novo
 review.  
People v. Sorenson
, 196 Ill. 2d 425, 431, 752 N.E.2d 1078, 1083 (2001).

After considering all the circumstances set forth in an affidavit or sworn complaint and the veracity and the basis of knowledge of persons supplying information, a judge may issue a search warrant if he determines that there is a fair probability that contraband or evidence of criminal activity will be found in a particular place.  
Illinois v. Gates
, 462 U.S. 213, 238, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332 (1983); 
People v. Silver
, 151 Ill. App. 3d 156, 159-60, 502 N.E.2d 1141, 1144 (1986).  The affidavit for a warrant " 'must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion'[] and should not be found deficient through hypertechnical scrutiny" or a naive evaluation of the facts.  
People v. Dillon
, 44 Ill. 2d 482, 487-88, 256 N.E.2d 451, 454 (1970) (quoting and "emphatically endors[ing]" 
United States v. Ventresca
, 380 U.S. 102, 108, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746 (1965)).    

In this case, the informant appeared before the judge who considered the warrant application.  The judge was able to make a firsthand finding regarding the credibility of the informant.  See 
People v. O'Neal
, 40 Ill. App. 3d 448, 352 N.E.2d 282 (1976).  Based on information provided by the informant, the judge determined that there was probable cause to believe that a crime had been or was being committed and that evidence of that activity would be found in the trailer and surrounding structures described in the complaint. 

To be valid, a search warrant must particularly describe the area to be searched and the items to be seized.  725 ILCS 5/108-3, 108-7 (West 2000).  A search warrant is sufficiently descriptive if it enables a police officer executing the warrant, with reasonable effort, to identify the persons or places intended to be searched with definiteness and certainty.  See 
People v. Watson
, 26 Ill. 2d 203, 206, 186 N.E.2d 326, 327 (1962); 
People v. Edwards
, 35 Ill. App. 3d 807, 808, 342 N.E.2d 800, 802 (1976); 
People v. Laws
, 7 Ill. App. 3d 826, 827, 288 N.E.2d 890, 891 (1972).  It is not necessary that the warrant be technically correct; rather, the warrant must only identify the place to be searched to the exclusion of all others.  
Edwards
, 35 Ill. App. 3d at 808, 342 N.E.2d at 802. 

In this case, the informant said that the trailer was located three-fourths of a mile south of the intersection of Kinlou Road and O'Leary Road and was the third trailer east of O'Leary Road.  It is undisputed that defendant stayed regularly at the trailer described by the informant, and his teenage son lived there.  The trial court found that Deputy Rose's testimony was credible.  Deputy Rose testified that he was familiar with that trailer because he had served papers at that location in the previous two years and that he did not see the "fourth" trailer on the day he served the warrant.  The court also accepted Jeanyne Reynolds'  testimony that the "fourth" trailer was not used as a residence and was basically abandoned.  Neither the affidavit nor the warrant listed a specific address for the premises to be searched.  Though Deputy Rose misstated the address of the trailer searched in his search warrant inventory and investigative report, those documents were prepared after the search.  The error occurred after the search and did not affect the substantial rights of the defendant.  There is no evidence that the search was executed at the wrong location.  There is sufficient evidence to support the trial court's findings that the warrant sufficiently described the place to be searched and that it was executed properly.  

Defendant also challenged the warrant on grounds that the description of the items to be seized lacked sufficient particularity.  The degree of particularity is determined on a case-by-case basis and depends on the nature of the items to be seized.  
People v. Batac
, 259 Ill. App. 3d 415, 420, 631 N.E.2d 373, 379 (1994).  A minute and detailed description is not required, but the property must be sufficiently described so that the officer conducting the search will not seize the wrong property or go on a fishing expedition.  
Batac
, 259 Ill. App. 3d at 420, 631 N.E.2d at 379.  Where items of a specific nature are to be seized, a description of the characteristics of that property is sufficient.  See 
People v. Curry
, 56 Ill. 2d 162, 306 N.E.2d 292 (1973).  In this case, the warrant lists the items to be seized as methamphetamine, drug paraphernalia, and United States currency.  To a trained officer, these items are easily identifiable as contraband.  Considering the nature of the items to be seized, we find that the descriptions in the warrant were adequate to satisfy the particularity requirements.  

Defendant has also objected that the scope of the warrant was too broad in that it included the seizure of "occupants" even though the informant had only identified defendant with the use and manufacture of methamphetamine.  Defendant argues that the seizure of occupants without probable cause demonstrates the unbridled scope of the warrant.  Initially, we note that defendant has not shown how he was harmed as a result of the alleged constitutional violation.  There is no indication that his convictions were based on the fruit of an allegedly illegal arrest of others on the property.  Moreover, defendant has not demonstrated that he has standing to complain of the violation of another's constitutional rights.  See 
People v. Martinez
, 307 Ill. App. 3d 368, 374, 717 N.E.2d 535, 540 (1999).  Further, the partial invalidity of a warrant does not taint the entire warrant, and the invalid portion can simply be extracted from the warrant and the tainted items suppressed.  
People v. McCoy
, 135 Ill. App. 3d 1059, 1067, 482 N.E.2d 200, 207 (1985).  

In this case, the trial court's finding that the warrant was validly issued was not manifestly erroneous.  The warrant was of sufficient particularity in regard to the places to be searched and the items to be seized.  The circuit court did not err in denying defendant's motion to suppress. 

In his next point, defendant claims that the Class X penalty provisions set forth in section 401(a)(6.5) of the Act (720 ILCS 570/401(a)(6.5) (West 2000)) violate the constitutional prohibition against disproportionate penalties because the statute punishes an individual in possession of a larger amount of unusable and unfinished methamphetamine more severely than an individual in possession of a smaller amount of pure product that is finished and packaged for consumption.  Defendant asks this court to strike the statute as unconstitutional as applied and vacate the conviction. 

The legislature has the power to define criminal conduct and to determine the nature and extent of criminal sentences required to protect society.  
People v. Hill
, 199 Ill. 2d 440, 453, 771 N.E.2d 374, 382 (2002).  Its decisions are entitled to a presumption of constitutionality.  
Hill
, 199 Ill. 2d at 443, 771 N.E.2d at 376.  The party challenging a statute has the burden of proving its invalidity.  
Hill
, 199 Ill. 2d at 443, 771 N.E.2d at 376.  

The proportionate penalties clause of the Illinois Constitution requires the legislature to proportion penalties according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship.  Ill. Const. 1970, art. I, §11; 
People v. Lombardi
, 184 Ill. 2d 462, 473-74, 705 N.E.2d 91, 97 (1998).  A criminal penalty violates the clause (1) if it is so cruel, degrading, or wholly disproportionate to the offense committed that it shocks the moral sense of the community, (2) if, upon comparing similar offenses, the court concludes that the conduct that creates a less serious threat to public health and safety is punished more severely, or (3) if identical offenses are given different sentences.  
Lombardi
, 184 Ill. 2d at 474, 705 N.E.2d at 98.  

Defendant contends that the statutory scheme of section 401(a)(6.5) is invalid under the first two prongs of 
Lombardi
.  Defendant argues that the statutory scheme violates the proportionate penalties clause because the penalty imposed on "an individual who possesses a great amount, in grams, of a dilute compound substance containing only a nominal amount of methamphetamine, still in the manufacturing process, before the most significant amount of weight (the unwanted solvent) is discarded" is the same as the penalty imposed on "a kingpin possessing that same great weight of pure drug" that is ready for distribution.  Defendant argues that the petty manufacturer who is interrupted before the process is completed is "one or more steps removed from the type of threat to public health and safety that the ultimate distributor is[] and should not be punished more severely" based on the gram weight of the diluted, useable substance still in the manufacturing process. 

Defendant's contention requires a two-step analysis.  
Lombardi
, 184 Ill. 2d at 475, 705 N.E.2d at 98.  First, we consider whether the purposes of the compared offenses are distinct so that comparative-proportionality review is not appropriate.  
Lombardi
, 184 Ill. 2d at 475, 705 N.E.2d at 98.  If the purposes are deemed relevant, we consider whether the offense with the harsher penalty is more serious than the offense with the less severe penalty.  
Lombardi
, 184 Ill. 2d at 475-76, 705 N.E.2d at 98.  Defendant bears the burden of establishing each prong of the test.  
Hill
, 199 Ill. 2d at 454, 771 N.E.2d at 383.

The general purpose of the Illinois Controlled Substances Act is to curb the rising incidence of drug abuse by limiting access to illegal controlled substances and by severely punishing the large-scale purveyors and traffickers.  See 720 ILCS 570/100 (West 2000).  Section 401(a)(6.5) of the Act deals specifically with the manufacture and trafficking of methamphetamine.  While the provisions against the trafficking of methamphetamine fall within the general purpose of the Act, the provisions against methamphetamine manufacture seem to target a danger unique to that process and distinct from the distribution and trafficking of that substance.  A methamphetamine manufacturer poses a threat to the public health and safety not only because he is attempting to produce a highly dangerous and addictive product but also because he is engaged in a process involving highly toxic and combustible chemicals.  Increasingly, the "labs" are located in populated areas.  In contrast, the distributor poses a threat to the public health and safety because he is selling to individuals who might become addicted and because trafficking spawns other criminal activities.  The public must deal with the actions of the abuser and the consequences of the abuse.  We conclude that the conduct of the methamphetamine manufacturer is sufficiently distinct from that of the distributor and that proportionate review is inappropriate.  See 
Hill
, 199 Ill. 2d at 459, 771 N.E.2d at 385. 

As to the second prong, the determination of whether a particular offense is more serious than another is not limited to an examination of the degree of harm inflicted.  
Hill
, 199 Ill. 2d at 454, 771 N.E.2d at 383.  The legislature may consider other factors, such as the frequency of the crime and the high risk of bodily harm associated with the crime, and conclude that a more stringent penalty is required in order to halt an increase in the commission of a particular crime.  
Hill
, 199 Ill. 2d at 454, 771 N.E.2d at 383.  Courts will generally defer to the legislature's judgment that a particular offense is more serious than another, because the legislature is better equipped than the judiciary to identify the evils confronting society and to gauge the seriousness of an offense and the appropriate remedy.  
Hill
, 199 Ill. 2d at 454, 771 N.E.2d at 383.  

In this case, the record supports defendant's claim that he is a "novice" in the methamphetamine-manufacturing-and-distribution business, but that does not help him.  It seems to us that defendant lacks a reasonable perception of the harm posed by his conduct.  The legislature reasonably could have determined that a novice who experiments with the types of highly dangerous chemicals necessary to produce methamphetamine poses a substantial threat to public safety and that the threat is equal to or more dangerous than the threat posed by a large-scale trafficker.  Given the potential dangers to public health and safety posed by the manufacturing process, we cannot conclude that the legislature's decision to impose a 15-to-60-year sentence is wholly disproportionate to the offense.  Therefore, we find that defendant has failed to carry his burden to prove that the statute violates the constitutional provision against disproportionate penalties.  See 
Hill
, 199 Ill. 2d 440, 771 N.E.2d 374.   

Defendant also contends that the legislature never intended the phrase "substance containing methamphetamine" in section 401(a)(6.5)(D) of the Act to include the waste product or by-product of the distilling or manufacturing process.  Section 401(a)(6.5)(D) of the Act states that a person who knowingly manufactures or delivers, or possesses with intent to manufacture or deliver, 900 grams or more of a substance containing methamphetamine is guilty of a Class X felony carrying a prison term of not less than 15 years and not more than 60 years.  720 ILCS 570/401(a)(6.5)(D) (West 2000).  Had the legislature intended to restrict the scope of the statute to a substance containing methamphetamine that was usable, ingestible, or marketable, it could have specifically excluded from the weight element any by-product or waste resulting from the manufacturing process.  It has not done so.  We are not inclined to read in an exclusion, in the absence of a showing that the language of the statute is unclear and that the legislature intended such an exclusion (
People v. Butler
, 304 Ill. App. 3d 750, 758-59, 709 N.E.2d 1272, 1278-79 (1999)), and defendant has not made that showing here.  

In his final point, defendant claims that the conviction for possession with intent to deliver more than 30 grams of cannabis must be reduced to simple possession because the State failed to provide sufficient evidence to prove the element of an intent to deliver.  On review, a court will not overturn a conviction on the ground of insufficient evidence unless the evidence is plainly contrary to the verdict or so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt.  
People v. Greenleaf
, 254 Ill. App. 3d 585, 589, 627 N.E.2d 111, 114 (1993).  

In order to support a conviction for unlawful possession of cannabis with intent to deliver, the State must establish beyond a reasonable doubt that the defendant had knowledge of the presence of the cannabis, that the cannabis was in the immediate control or possession of the defendant, and that the defendant intended to deliver the cannabis.  
People v. Robinson
, 167 Ill. 2d 397, 407, 657 N.E.2d 1020, 1026 (1995).  On appeal, defendant has challenged the sufficiency of the evidence only regarding the third element.  The issue is whether, after viewing all the evidence in a light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that defendant intended to deliver the cannabis in his possession.  
Robinson
, 167 Ill. 2d at 407, 657 N.E.2d at 1026; 
Greenleaf
, 254 Ill. App. 3d at 589, 627 N.E.2d at 114-15.

An intent to deliver is seldom amenable to direct proof and generally must be inferred from circumstantial evidence.  
Robinson
, 167 Ill. 2d at 408, 657 N.E.2d at 1026.  A reasonable inference of an intent to deliver may be derived from evidence that the quantity of the illegal drug was in excess of any amount that could reasonably be possessed for personal use.  
People v. Songer
, 229 Ill. App. 3d 901, 905, 594 N.E.2d 405, 408 (1992).  A reasonable inference of an intent to deliver may also be derived from other circumstances, such as the manner in which the drugs are packaged and stored, the presence or absence of scales and cutting materials, the presence or absence of drug paraphernalia associated with personal use, the possession of a large amount of cash, and the possession of cell phones or beepers.  
People v. Neylon
, 327 Ill. App. 3d 300, 310, 762 N.E.2d 1127, 1136 (2002); 
Songer
, 229 Ill. App. 3d at 905, 594 N.E.2d at 408.  

The evidence adduced during the State's presentation demonstrated that during a search inside the trailer the police had discovered more than 30 grams of marijuana and more than $3,000 in cash in a locked box.  The police also discovered a set of scales, a walkie-talkie, two hand-held police scanners, methamphetamine-manufacturing materials, drug paraphernalia, a one-hitter pipe, and a one-hitter box.  In a recorded statement to police, defendant admitted that he had decided to try manufacturing methamphetamine so that he could sell it and make a little money.  Defendant also admitted that the cannabis and the cash had belonged to him.  He denied that the cash was "drug money."  Thirty grams of cannabis is a hefty quantity.  But standing alone, this quantity could arguably represent several weeks' worth of a personal supply for a frequent user.  Likewise, the currency, standing alone, could have been earned from something other than the sale of drugs.  However, when all the evidence is viewed in a light most favorable to the prosecution, a rational trier of fact could certainly conclude that there was sufficient circumstantial evidence to establish beyond a reasonable doubt the element of an intent to deliver cannabis.  See 
Robinson
, 167 Ill. 2d at 413-14, 657 N.E.2d at 1029; 
Neylon
, 327 Ill. App. 3d at 310-11, 762 N.E.2d at 1136-37.  The evidence is sufficient to find beyond a reasonable doubt that defendant unlawfully possessed the cannabis with the intent to deliver, and the conviction is affirmed.  

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.  

KUEHN and HOPKINS, JJ., concur.  

 NO. 5-03-0475

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

THE PEOPLE OF THE STATE OF ILLINOIS, )  Appeal from the  

)  Circuit Court of

Plaintiff-Appellee, )  Marion County.

) 

v. )  No. 01-CF-404

)

ROGER W. McCARTY, )  Honorable

)  Patrick L. Duke, 

Defendant-Appellant. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: March 22, 2005

___________________________________________________________________________________

Justices
: Honorable James K. Donovan, P.J.

Honorable Clyde L. Kuehn, J., and

Honorable Terrence J. Hopkins, J.,

Concur

___________________________________________________________________________________

Attorneys
 Daniel M. Kirwan, Deputy Defender, Dan W. Evers, Assistant Defender, Office 

for
 of the State Appellate Defender, Fifth Judicial District, 730 E. Illinois Hwy. 15, 

Appellant
 Suite #1, Mt. Vernon, IL 62864

___________________________________________________________________________________

Attorneys
 Hon. Matt Wilzbach, State's Attorney, Marion County Courthouse, P.O. Box 157,

for
 Salem, IL 62881; Norbert J. Goetten, Director, Stephen E. Norris, Deputy Director,

Appellee
 Deirdre A. Hosler, Staff Attorney, Office of the State's Attorneys Appellate 

Prosecutor, 730 E. Illinois Hwy. 15, Suite #2, P.O. Box 2249, Mt. Vernon, IL  62864

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 03/22/05.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.