THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEANYNE A. REYNOLDS, Defendant-Appellant.

Fifth District    No. 5—03—0493

Opinion filed May 24, 2005.

288

Daniel M. Kirwan and Larry R. Wells, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Matt Wilzbach, State's Attorney, of Salem (Norbert J. Goetten, Stephen E. Norris, and Deirdre A. Hosler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Jeanyne A. Reynolds, was charged by information with two counts of unlawful manufacture of more than 900 grams of a substance containing methamphetamine (count I and count II) (720 ILCS 570/401(a)(6.5)(D) (West 2000)) and one count of unlawful possession of more than 30 grams of cannabis with intent to deliver (count III) (720 ILCS 550/5(d) (West 2000)). After a stipulated bench trial in the circuit court of Marion County, defendant was found guilty of counts I and III and not guilty of count II and was sentenced to 15 years in the Department of Corrections on count I and 5 years on count III, with the sentences to run concurrently. On appeal, defendant contends as follows: (1) the search warrant was unconstitutional and the items seized should have been suppressed because the place to be searched and the items to be seized were not identified with particularity, the scope was too broad, and the unidentified occupants were arrested and searched, (2) the Class X penalty provisions for unlawful manufacture of a controlled substance containing methamphetamine constitute disproportionate penalties, (3) the length of her sentence should be reduced to that for possession of a nominal amount of methamphetamine because the legislature did not intend to include the mass of incidental by-product or solvent within the definition of "substance containing methamphetamine," (4) she was not proven guilty beyond a reasonable doubt because the State did not establish that more than a nominal amount of methamphetamine was present in the samples tested at the laboratory, (5) the sentence imposed on count I must be vacated and the cause remanded for resentencing pursuant to section 401(a)(6.5)(A) of the Illinois Controlled Substances Act (720 ILCS 570/401(a)(6.5)(A) (West 2002)), and (6) her conviction for possession of cannabis with intent to deliver should be reduced to simple possession because the State failed to prove the intent-to-distribute element beyond a reasonable doubt. We affirm.

## BACKGROUND

On December 20, 2001, a deputy in the Marion County sheriff's department, Mark Rose, received a call from an unknown informant who claimed to have information about a local methamphetamine lab and methamphetamine materials. Deputy Rose took the informant

before a judge in order to secure a search warrant. The informant swore that earlier that day he had been at "Roger McCarty's trailer located approximately $3/4$ of a mile south of the intersection of Kinlou Rd[.] [and] O'Leary Rd.[,] being the 3rd traler [sic] east of O'Leary Rd[.]," where he saw McCarty ingest methamphetamine. The informant further swore that McCarty had admitted to him that at a prior time he had made methamphetamine at the same location. The judge issued a warrant authorizing a search of "the trailer of Roger McCarty located approximately $3/4$ of a mile south of the intersection of Kinlou Rd[.] [and] O'Leary Rd[.][,] being the 3rd trailer east of O'Leary Rd[.][,] and a camper located in the woods east of the trailer, including outbuildings, motor vehicles[,] [and] occupants" for "the following instrument [sic], articles[,] and things which have been used in the commission of, or which constitute evidence of, the offense of [unlawful possession] of methamphetamine." The items to be seized included "any and all quantities of methamphetamine[,] records of drug transactions[,] drug paraphernalia[,] [and] United States currency."

Deputy Rose, accompanied by other sheriff's department officers, served the warrant at approximately 1:45 p.m. that day. Roger McCarty, defendant (who was McCarty's girlfriend), and McCarty's teenage son were in the trailer and were detained during the search. The trailer that was searched turned out to be the fourth trailer east of Kinlou Road on O'Leary Road, not the third trailer east of O'Leary Road. Numerous items were seized, including containers of suspected methamphetamine materials, six bottles of pseudoephedrine pills, cannabis seeds, miscellaneous lithium batteries, drug equipment, a set of electronic scales, a one-hitter box, six cans of Coleman fuel, gas masks, and a black locked metal box containing $3,030 and approximately 30 grams of cannabis. Officers arrested defendant, McCarty, and others at the scene.

On December 21, 2001, defendant and McCarty were charged by information with manufacture of less than 5 grams of a substance containing methamphetamine (720 ILCS 570/401(d) (West 2000)), unlawful possession of a methamphetamine chemical with intent to manufacture less than 15 grams of a substance containing methamphetamine (720 ILCS 570/401(d—5) (West 2000)), and unlawful possession with intent to deliver more than 30 grams but not more than 500 grams of a substance containing cannabis (720 ILCS 550/5(d) (West 2000)). The methamphetamine-manufacturing counts were later amended from Class 2 to Class X felonies as previously set forth.

Defendant and McCarty each filed a motion to suppress the evidence seized during the search on December 20, 2001. Both alleged

that the fruits of the search should be suppressed because the search warrant failed to describe with particularity the premises to be searched and the items to be seized. The motions were consolidated for hearing, and a hearing was held.

Deputy Rose was the first witness to testify at the hearing. He said he received a Crime Stoppers call on December 20, 2001. The caller explained that he had information concerning a possible methamphetamine lab and materials for making methamphetamine. Deputy Rose met with the informant. He had not worked with the informant before this incident. The informant told Rose he had been at Roger McCarty's trailer earlier that morning and had seen McCarty smoking methamphetamine. According to the informant, McCarty admitted making methamphetamine at that location. The informant described the location as "Roger McCarty's trailer located approximately 3/4 of a mile south of the intersection of Kinlou Rd[.] [and] O'Leary Rd.[,] being the 3rd traler [sic] east of O'Leary Rd[.][,] and a camper located in the woods east of the trailer." The informant went before the judge and provided the information under oath. Deputy Rose did not vouch for the informant before the court. The judge issued the warrant and authorized a search of McCarty's trailer, a camper located in the woods, outbuildings, motor vehicles, and occupants.

Deputy Rose and other sheriff's department officers served the warrant. The officers secured the people they saw milling around outside the trailer. Allen Keen was arrested because he was sitting outside the trailer. Rita Smith, who was near the trailer, was also arrested. Deputy Rose knocked on the door of the trailer and announced he had a warrant. He waited approximately five seconds, and when no one responded, he entered the trailer. Defendant was in the kitchen. She was escorted from the trailer and detained outside. McCarty was in the shower, and his son was also in the trailer. The minor was taken to his grandfather's residence.

Deputy Rose spoke with McCarty. McCarty identified himself and gave his address as 7912 O'Leary Road. The officers conducted a search of the trailer and the surrounding structures. Numerous items were seized and catalogued in a search warrant inventory. Rose was questioned extensively about his narrative report, which was prepared after the search and described the search. In the report, Rose listed the address of the trailer searched as 7912 O'Leary Road. Deputy Rose testified he did not know the address of the trailer prior to the search. When he served the warrant, he relied on the description provided by the informant. Rose said he was familiar with the layout of the property described by the informant because Rose had previously been

to that location to serve papers. The actual trailer searched was 7914 O'Leary Road rather than 7912 O'Leary Road, but Rose said he was not aware of this until the preliminary hearing. At the time the warrant was served, Deputy Rose was under the impression that Roger McCarty owned the trailer and lived in the trailer that had been searched. Rose said he was unaware of a fourth trailer in the area.

Defendant testified during the suppression hearing that she owned the trailer located at 7914 O'Leary Road and that she resided there with her daughter and Roger McCarty's son. Defendant said she purchased the trailer from McCarty's parents in 2000. She said that she and McCarty were engaged and that McCarty stayed at her trailer from time to time, sometimes every other weekend. McCarty kept personal items at her trailer, and she did his laundry at her trailer. Defendant said she did not hear a knock prior to Deputy Rose entering the trailer. She said Rose entered the trailer shouting, "Sheriff's department[;] I have a warrant to search this residence." Defendant was handcuffed and taken outside.

Defendant was questioned about the other trailers located near hers. According to defendant, Roger McCarty's father owned the trailer located at 7910 O'Leary Road, which was just south of hers. Roger McCarty's trailer was the one nearest to O'Leary Road, located at 7912 O'Leary Road. Defendant testified that a fourth trailer was located on the opposite side of the driveway, near a shed and barn. Roger McCarty's sister and brother-in-law had placed the fourth trailer there, and it was still up on wheels with a hitch attached. There was no postal address for the fourth trailer because it was not used as a residence and was basically abandoned.

Roger McCarty testified that he did not reside at defendant's trailer at the time of the search. McCarty said he sometimes stayed at his father's trailer and other times stayed at his sister's trailer. McCarty said his sister lived in the trailer at 7912 O'Leary Road. He said he purchased the "fourth" trailer from his sister and brother-in-law in November 2001. It had been moved onto the property in October 2001. McCarty admitted that he was at defendant's trailer the morning of December 20, 2001, but he denied spending the previous night at defendant's trailer. He did not hear Deputy Rose knock and announce before entering the trailer.

The court took the motion under advisement and later entered a written order denying defendant's motion to suppress. The court found Deputy Rose credible when he said he had not seen the "fourth" trailer in the area and when he said he was familiar with the trailer described by the informant. The court accepted defendant's testimony that the fourth trailer was unoccupied and did not appear to be a

residential dwelling, that McCarty's teenage son lived with her, and that McCarty often stayed with defendant. The court did not consider the postal address error to be significant because the trailer was not described by a postal address in either the complaint or the warrant, the postal addresses of the trailers were not in the usual ascending order, and the trailer was located in a rural area, which was accurately described in the complaint and the affidavit. The court resolved the factual discrepancies in favor of the State and found that the warrant was properly executed.

Prior to the trial, defendant sought to dismiss count I and count II on the basis that the statutes under which those counts were charged violated the proportionate penalties clause and her due process rights. The motion was denied.

The case was tried on stipulated evidence. The State recounted the evidence its witnesses would have offered. The evidence included test results showing that more than 900 grams of liquid, from which samples had been taken, tested positive for the presence of methamphetamine and that more than 30 grams of material, from which samples had been taken, tested positive for cannabis. The liquid samples were taken from a green bucket, a pitcher, a Mason jar, and a bottle. The stipulated evidence also included the introduction of a police report prepared by Deputy Rose which stated that McCarty, defendant, and Allen Keen admitted having the intention to make methamphetamine. Deputy Rose said that he talked with defendant and Roger McCarty the day the items were seized and that both admitted they were in the process of making methamphetamine in order to make money. Allen Keen admitted he was helping McCarty and defendant make methamphetamine. Keen said his involvement was mainly for his personal use, because he is addicted to methamphetamine. Defendant did not testify and offered no additional evidence.

Defendant was found guilty on counts I and III but not guilty on count II. At the sentencing hearing, the question arose concerning the street value of the substances containing methamphetamine that defendant was convicted of manufacturing. The State conceded that the material had no economic value because no one could testify regarding the amount of recoverable methamphetamine in any of the samples, because the product was in the process of being manufactured. The trial court sentenced defendant to 15 years in the Department of Corrections on count I and 5 years on count III.

Defendant filed a posttrial motion. One issue raised was whether the trial court erred in denying defendant an independent expert to assist the defense in preparing to confront the laboratory findings of the presence of methamphetamine. Defendant asserted that the

concentration of methamphetamine in some of the samples seized by the police might be so small that it would be consistent with contamination rather than manufacture. The posttrial motion was denied. Defendant now appeals.

## ANALYSIS

Defendant first contends that the search of the premises was unconstitutional because the warrant failed the particularity requirements found in the United States Constitution (U.S. Const., amend. IV) and the Illinois Constitution (Ill. Const. 1970, art. I, § 6) in that the warrant did not adequately describe the place to be searched and the items to be seized and was unconstitutionally broad. Defendant insists that the trial court's order refusing to suppress the results of the search must be reversed. This court recently rejected the identical argument raised by Roger McCarty in the appeal of his convictions. *People v. McCarty*, 356 Ill. App. 3d 552 (2005). We borrow liberally from that opinion in addressing the issues raised in the instant appeal.

■ In a review of a ruling on a motion to suppress, a trial court's findings of fact will not be disturbed unless they are against the manifest weight of the evidence or clearly erroneous, but the trial court's legal conclusions are subject to *de novo* review. *People v. Sorenson*, 196 Ill. 2d 425, 431, 752 N.E.2d 1078, 1083 (2001). A judge may issue a search warrant if, after considering all the circumstances set forth in an affidavit or sworn complaint and the veracity and basis of the knowledge of the person supplying the information, the judge determines there is a fair probability that contraband or other evidence of criminal activity will be found in a particular place. *People v. Batac*, 259 Ill. App. 3d 415, 420, 631 N.E.2d 373, 379 (1994). The affidavit for a warrant " 'must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion,' " not through hypertechnical scrutiny or a naive evaluation of the facts. *People v. Dillon*, 44 Ill. 2d 482, 487, 256 N.E.2d 451, 454 (1970) (quoting and "emphatically endors[ing]" *United States v. Ventresca*, 380 U.S. 102, 108, 13 L. Ed. 2d 684, 689, 85 S. Ct. 741, 746 (1965)).

■ Here, the confidential source appeared before the trial judge. The trial judge was able to make his own finding regarding the credibility of the informant. The informant said he had been at Roger McCarty's at approximately 8:30 a.m. to attempt to buy drugs and saw McCarty in the process of making methamphetamine. McCarty told the informant the process would be completed later that morning. The judge determined there was probable cause to believe that a crime had been or was being committed and that evidence of that criminal activ-

ity would be found in the trailer and surrounding structures described in the complaint.

■ A search warrant is sufficiently descriptive if it enables a police officer executing the warrant to identify with definiteness and certainty the persons or places intended to be searched. *People v. Watson*, 26 Ill. 2d 203, 206, 186 N.E.2d 326, 327 (1962); *People v. Edwards*, 35 Ill. App. 3d 807, 808, 342 N.E.2d 800, 802 (1976). The warrant does not have to be technically correct; rather, it must only identify the place to be searched to the exclusion of all others. *Edwards*, 35 Ill. App. 3d at 808, 342 N.E.2d at 802.

Here, neither the affidavit nor the warrant listed the specific postal address of the premises to be searched. While Deputy Rose misstated the address in his report and inventory, those documents were prepared after the search. The trailer was located in a rural area, and Deputy Rose was acquainted with the area, because he had been to the location previously to serve papers. Both defendant and Roger McCarty admitted that McCarty regularly stayed at the trailer that was searched and that Roger McCarty's 13-year-old son lived at the trailer. Defendant admitted that the "fourth" trailer in the area was not used as a residence and was virtually abandoned. Our review of the record shows that while there was confusion about the address to be searched, the search itself was executed at the correct location. Under these circumstances, we find that the warrant sufficiently described the place to be searched and that the warrant was properly executed.

Defendant also challenges the warrant on the ground that the description of the items to be seized lacked sufficient particularity. However, a minute and detailed description is not required. It is enough if the property is sufficiently described so that the officer conducting the search will not seize the wrong property or go on a fishing expedition. *People v. Batac*, 259 Ill. App. 3d 415, 420, 631 N.E.2d 373, 379 (1994). Here, the items listed in the warrant included methamphetamine, drug paraphernalia, and United States currency. These items are easily identified as contraband by a trained officer. We find that the descriptions contained in the warrant were sufficient to satisfy the particularity requirements.

■ Defendant, relying on *Ybarra v. Illinois*, 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338 (1979), further contends that the warrant was unconstitutional because it included the seizure of "occupants" even though the informant only identified Roger McCarty as the manufacturer and user of methamphetamine. In *Ybarra*, the Supreme Court held that independent probable cause is required before officers can validly search a person present at a place being searched pursuant to a warrant if that person is not named in the warrant.

Defendant only has standing to complain about the violation of her own constitutional rights. See *People v. Martinez*, 307 Ill. App. 3d 368, 374, 717 N.E.2d 535, 540 (1999). Furthermore, we agree with the State that the listing of occupants was superfluous and severable from what is otherwise a valid warrant. The listing of occupants is superfluous because the police have the authority to make warrantless arrests of those whom they have probable cause to suspect of committing a crime, and the police may search a person incident to a valid arrest. In the instant case, Deputy Rose and other officers who served the warrant had the authority to arrest and search the occupants of the trailer when they served the valid warrant and discovered the manufacture of methamphetamine on the premises.

■ Defendant further complains that she was denied the effective assistance of counsel because her attorney failed to complain that the warrant was too broad. A review of the motion to suppress shows that defense counsel alleged a lack of specificity in the warrant and pointed out inaccuracies in the description of the places to be searched. After consideration, we find that we need not address the issue of whether defense counsel was ineffective, because the warrant was of sufficient particularity in regard to the places to be searched and the items to be seized. We do not agree with defendant that the scope of the warrant was too broad. Moreover, we cannot say that the trial court's finding that the warrant was validly issued was manifestly erroneous. The trial court did not err in denying defendant's motion to suppress.

■ Defendant next contends that the Class X penalty provisions set forth in section 401(a)(6.5) of the Illinois Controlled Substances Act (720 ILCS 570/401(a)(6.5) (West 2000)) violate the constitutional prohibition against disproportionate penalties because the statute punishes an individual in possession of a larger amount of an unusable and unfinished methamphetamine more severely than an individual in possession of a smaller amount of pure product finished and packaged for consumption. Defendant asserts that the statute should be declared unconstitutional as applied and that her conviction must be vacated.

This issue was addressed at length in *People v. McCarty*, in which it was explained that, given the potential dangers to public health and safety posed by the manufacture of methamphetamine, the legislature's sentencing range of 15 years to 60 years was not disproportionate to the offense. *McCarty*, 356 Ill. App. 3d at 564. Likewise, we find that defendant in the instant case has failed to carry her burden to prove that the statute violates the constitutional provision against disproportionate penalties. *McCarty* sufficiently addresses the issue, and we need not address the issue further.

■ The next argument raised by defendant was also addressed in *McCarty*. Defendant asserts that the legislature never intended the phrase "substance containing methamphetamine" in section 401(a)(6.5)(D) of the Illinois Controlled Substances Act (720 ILCS 570/ 401(a)(6.5)(D) (West 2000)) to include the waste product or by-product of the distilling or manufacturing process. As pointed out in *McCarty*, however, if the legislature intended to restrict the scope of the statute to a substance containing methamphetamine that was usable, ingestible, or marketable, it would have specifically excluded from the gram amount any by-product or waste resulting from the manufacturing process. *McCarty*, 356 Ill. App. 3d at 565; see also *People v. Butler*, 304 Ill. App. 3d 750, 758-59, 709 N.E.2d 1272, 1278-79 (1999). Because there is no indication that the legislature intended to include such an exception within the statute, we will not interpret there to be such an exception.

■ Defendant further argues that because the State did not establish that more than a nominal amount of methamphetamine was present in the samples tested at the laboratory, she was not proven guilty beyond a reasonable doubt. Defendant insists that the presence of a nominal amount of methamphetamine, without more, is consistent with contamination or accidental presence without knowledge or ability to control and that, therefore, her conviction for manufacturing methamphetamine must be reduced to attempted manufacture (720 ILCS 5/8—4 (West 2000)). We disagree.

The instant case is analogous to *People v. Haycraft*, 349 Ill. App. 3d 416, 811 N.E.2d 747 (2004), which rejected the identical sufficiency-of-the-evidence argument. The *Haycraft* court determined there was sufficient evidence to support the finding that the defendant possessed more than 900 grams of methamphetamine even though the substances containing methamphetamine had not yet reached their final, marketable form, because the mixture in the container found in the defendant's kitchen constituted a "substance containing methamphetamine" within the meaning of section 401(a)(6.5)(D). *Haycraft*, 349 Ill. App. 3d at 427-28, 811 N.E.2d at 758-59.

In the instant case, defendant stipulated that during the search of her trailer and surrounding areas, law enforcement officials found an amount of liquid mixture heavier than 900 grams, which tested positive for methamphetamine. According to Deputy Rose, both defendant and her boyfriend admitted they were manufacturing methamphetamine. Relying on *Haycraft*, we find sufficient evidence to support the trial court's finding that defendant possessed more than 900 grams of methamphetamine.

■ Defendant's next argument is similar to her last. Defendant

points out that the two heavy containers—the bucket and the pitcher—contained nonhomogenous material, namely, sludge at the bottom and liquid at the top. She argues that because there was no evidence concerning the weight or the composition of the two materials, the sample taken cannot be used to extrapolate the composition of the contents of a whole and that, therefore, taking the evidence in the light most favorable to the State, the most that was proven was that each sample contained methamphetamine. She argues that her conviction must be reduced to manufacture of 15 to 100 grams (720 ILCS 570/401(a)(6.5)(A) (West 2002)) rather than 900 grams or more. We are unconvinced.

In *Haycraft*, the identical situation occurred, in that the ingredients had separated within the container. The *Haycraft* court nevertheless found that "[b]y initially combining the methamphetamine ingredients into the container, the defendant created, and possessed with the intent to manufacture, the 'substance containing methamphetamine' in violation of Illinois law (720 ILCS 570/401(a)(6.5)(D) (West 2000))." *Haycraft*, 349 Ill. App. 3d at 428, 811 N.E.2d at 759. Likewise in the instant case, we find it irrelevant that the mixtures concocted by defendant and/or her boyfriend had separated, because the contents of the bucket and the pitcher contained "substances containing methamphetamine." The stipulated evidence shows that the contents of the bucket weighed 957 grams and the contents of the pitcher weighed 761 grams and that both samples tested positive for methamphetamine. Under these circumstances, we reject defendant's contention that her conviction must be reduced to unlawful manufacture of less than 100 grams of a substance containing methamphetamine.

■ In her final argument, defendant claims that her conviction for possession with intent to deliver more than 30 grams of cannabis must be reduced to simple possession because the State failed to provide sufficient evidence to prove the element of intent to deliver. This issue was also sufficiently addressed in *McCarty* and need not be rehashed here. As the *McCarty* court pointed out, intent to deliver is rarely amenable to direct proof and, in general, must be inferred from circumstantial evidence. *McCarty*, 356 Ill. App. 3d at 565. A reasonable inference of intent to deliver was derived from the stipulated evidence, including the fact that the police discovered more than 30 grams of marijuana and $3,030 in United States currency in a locked box. The police also discovered a set of scales, a walkie-talkie, two hand-held police scanners, and drug paraphernalia. Under these circumstances, we find that sufficient evidence was presented to prove beyond a reasonable doubt that defendant unlawfully possessed the cannabis with the intent to deliver.

# CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Marion County is affirmed.

Affirmed.

WELCH and CHAPMAN, JJ., concur.